# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| | **CLASS ACTION** |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **DEMAND FOR JURY TRIAL** |
| HD SUPPLY HOLDINGS, INC., JOSEPH J. DEANGELO, AND EVAN J. LEVITT, | |
| Defendants. | |

# TABLE OF CONTENTS

I.    NATURE OF THE ACTION ...................................................................1

II.   JURISDICTION AND VENUE ..............................................................6

III.  PARTIES ...............................................................................................6

IV.   SUBSTANTIVE ALLEGATIONS .........................................................8

      A.    Background .................................................................................8

      B.    Defendants' Materially False and Misleading Statements...................9

      C.    The Truth Is Revealed ..............................................................14

      D.    Improper Insider Selling During The Class Period.............................18

V.    CLASS ACTION ALLEGATIONS ......................................................19

VI.   UNDISCLOSED ADVERSE FACTS ...................................................22

VII.  LOSS CAUSATION ............................................................................24

VIII. SCIENTER ALLEGATIONS ..............................................................26

IX.   APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-
      ON-THE-MARKET DOCTRINE ........................................................26

X.    NO SAFE HARBOR ............................................................................28

XI.   COUNTS AGAINST DEFENDANTS .................................................29

      COUNT I .............................................................................................29

      COUNT II ............................................................................................34

XII.  PRAYER FOR RELIEF .......................................................................36

XIII. JURY TRIAL DEMANDED ................................................................37

Plaintiff City of Hollywood Police Officers' Retirement System ("Plaintiff"), by and through its attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes without limitation: (a) review and analysis of public filings made by HD Supply Holdings, Inc. ("HD Supply" or the "Company") and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference call transcripts, and postings on HD Supply's website concerning the Company's public statements; and (d) review of other publicly available information concerning HD Supply and the Individual Defendants.

## I.  NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all persons or entities that purchased or otherwise acquired HD Supply securities between November 9, 2016 and June 5, 2017 (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     HD Supply is one of the largest industrial distributors in North America.  The Company provides a broad range of products and services to approximately 500,000 professional customers in the maintenance, repair and operations, infrastructure and power and specialty construction sectors.

3.     This action involves a fraudulent and illegal scheme by HD Supply's senior executives to artificially inflate the Company's stock price by issuing false and misleading guidance and hiding critical information from investors. Defendants' wrongful conduct allowed Defendant Joseph DeAngelo ("DeAngelo"), HD Supply's President, Chief Executive Officer ("CEO"), and Chairman of the Board of Directors, to unload over 1.3 million shares (representing 80% of his ownership in the Company) for proceeds of over $54 million just weeks before HD Supply's stock price declined precipitously.

4.     In early 2016, HD Supply's Facilities Maintenance ("FM") segment began experiencing a number of supply chain deficiencies.  The Company initially failed to properly calculate the demand for its products, leaving it undersupplied in advance of the 2016 spring and summer selling sessions.  When management noticed the Company's product shortfall, it took remedial action to adjust ordering, a decision that led to an unreasonably large buildup of inventory.  As a result, HD

Supply's distribution centers were stretched beyond capacity during the latter part of 2016.

5.      In November 2016, Defendants began touting that the Facilities Maintenance recovery was on track and that the Company was "perfectly positioned to enter 2017 and deliver on [its] commitments of 300 basis points more than market, one-and-a-half times operating leverage and 75% cash generation."  Throughout the Class Period, Defendants continued making similar statements, going so far as to assert that HD Supply's operating leverage would drastically increase in the second half of 2017 due to lower costs in the FM segment.

6.      However, on June 6, 2017, HD Supply reported first quarter 2017 earnings that missed analyst estimates; disclosed the divestiture of one its main business segments, "Waterworks," which is the nation's largest distributor of water, sewer, storm and fire protection products; and announced increased capital investments in its FM segment.  Given the sizeable increase in FM investment spending, HD Supply was forced to reduce its operating leverage targets for full year 2017—a widely followed metric in the industrial product supply industry.  The announced increase in FM investment spending caught analysts and investors by surprise, particularly since the Company had stated on multiple occasions that its

inventory setbacks were a thing of the past and that substantial investment in technology and operations had already been made by the Company.

7.     As a result of these disclosures, the Company's share price declined $7.24 per share, or 17.5%, from a close of $41.27 per share on June 5, 2017 to a close of $34.03 per share on June 6, 2017—wiping out over $1.4 billion in market capitalization in one day.  HD Supply's share price continued trading lower the next day on unusually elevated trading volume, dropping an additional $1.22 per share, or 4%, to $32.81 per share on June 7, 2017—representing a two-day drop of over 20%.

8.     In advance of these disclosures, and over the course of just one week, between March 29, 2017 and April 4, 2017, inclusive, Defendant DeAngelo sold over 1.3 million HD Supply shares for proceeds of nearly $54 million.  At the time DeAngelo disposed of his shares, Company insiders were fully aware of this negative information, yet failed to inform investors of the drastic increase in capital investments or the substantial likelihood that one of its main lines of business would be sold.  Instead, DeAngelo massively dumped shares at artificially inflated prices, grossing tens of millions of dollars prior to revealing the truth to the investing public.

9.     As further detailed below, throughout the Class Period, Defendants made false and/or misleading statements, and/or failed to disclose material adverse

4

facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) HD Supply's full year 2017 growth and operational leverage targets were unattainable; (2) the operational recovery of its Facilities Maintenance supply chain was not going according to plan; (3) the Company was exploring the sale of its Waterworks segment; (4) Defendant DeAngelo, with full knowledge of the undisclosed materially adverse facts alleged herein, embarked on a selling spree of personal holdings of HD Supply stock that netted him over $54 million in proceeds; and (5) as a result of the foregoing, Defendants' statements about HD Supply's business, operations, and prospects were false and misleading and/or lacked a reasonable basis. As a result of this fraudulent scheme, Defendants were able to artificially inflate the Company's financials throughout the Class Period.

10. As a direct result of Defendants' wrongful actions, HD Supply's common stock traded at artificially inflated prices throughout the Class Period.

11. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and the other Class members have suffered significant losses and damages.

5

## II.   <u>JURISDICTION AND VENUE</u>

12.   The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

14.   Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  A substantial portion of the acts in furtherance of the alleged fraud, including the preparation and dissemination of materially false and misleading information and the effects of the fraud, have occurred in this Judicial District.  In addition, the Company's principal executive offices are located within this Judicial District.

15.   In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## III.   <u>PARTIES</u>

16.   Plaintiff City of Hollywood Police Officers' Retirement System, as set forth in the accompanying certification, attached hereto as Exhibit "A" incorporated

6

by reference herein, purchased HD Supply common stock during the Class Period, and suffered damages as a result of the federal securities law violations and the false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant HD Supply is a Delaware corporation with its principal executive offices located at 3100 Cumberland Boulevard, Suite 1480, Atlanta, Georgia 30339.  HD Supply's securities are traded on the NASDAQ Stock Market ("NASDAQ") under the symbol "HDS."

18.     Defendant Joseph J. DeAngelo has served as the Company's President and Chief Executive Officer ("CEO") since January 2005 and as Chairman of the Board of Directors since March 12, 2015.

19.     Defendant Evan J. Levitt ("Levitt") served as HD Supply's Senior Vice President, Chief Financial Officer ("CFO"), Chief Administrative Officer and Comptroller during the Class Period.

20.     Defendants DeAngelo and Levitt are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of HD Supply's reports to the SEC, as well as its press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the

7

Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, and were the result of the collective actions of the Individual Defendants.

## IV.   <u>SUBSTANTIVE ALLEGATIONS</u>

### A.   **Background**

21.   HD Supply is one of the largest industrial distributors in North America. Through its Facilities Maintenance segment, HD Supply offers maintenance, repair, and operations products to the managers and owners of multifamily, hospitality and commercial properties as well as healthcare and government facilities.

22.   HD Supply's Waterworks segment is the nation's largest distributor of water, sewer, storm and fire protection products. Waterworks provides a number of

services, from water and sewer line installation, storm water retention systems and water/wastewater treatment plant construction to fire protection equipment and fusible piping.

23.   HD Supply's Construction & Industrial segment provides specialty hardware, tools and materials for medium-to-large contractors, including home improvement products and building materials.

24.   In early 2016, Facilities Maintenance's supply chain began having issues related to the under-ordering of inventory in advance of the 2016 spring and summer selling seasons.  Corrective action was taken to adjust ordering in 2016, which resulted in an unusual amount of inventory.  As a result, the Company's distributions center's resources were overstretched, forcing HD Supply to take remedial action to process the inventory in its network and rebalance it throughout the country.

**B.     Defendants' Materially False and Misleading Statements**

25.   On November 9, 2016, the first day of the Class Period, Defendants DeAngelo and Levitt took part in the Robert W. Baird Global Industrial Conference. During the conference, DeAngelo emphasized that "[o]ur work in Facilities Maintenance on our supply chain is on track. *We're perfectly positioned to enter 2017 and deliver on our commitments of 300 basis points more than market, one-*

9

*and-a-half times operating leverage and 75% cash generation*." When asked about the improvements being made to the FM segment, DeAngelo once again stressed that "we feel very comfortable that coming into next year, we will consistently be able to deliver and every year forward that 300 basis points market outgrowth and at a 1.5 operating leverage."

26.    On December 6, 2016, HD Supply issued a press release announcing its third quarter 2016 financial results.[1]  Immediately following the earnings announcement, HD Supply held an investor conference call to discuss its Q3 2016 financial results.  During the conference call, Defendant DeAngelo asserted that the "operational recovery" of its "Facilities Maintenance supply chain continues to make exciting daily progress, and the teams are executing at or ahead of expectations." DeAngelo also reaffirmed HD Supply's "commitment to generating 300 basis points of sales growth in excess of market and 1.5 times operating leverage for the full year of fiscal 2017."  The Company's projected operating leverage framework for fiscal 2017 was:

---

[1] The press release is titled "HD Supply Holdings, Inc. Announces Fiscal 2016 Third-Quarter Results."



27.     During the December 6th conference call, Joe Ritchie of Goldman Sachs asked DeAngelo about his confidence going into 2017, particularly with regards to the Facilities Maintenance fulfillment issue. In response, DeAngelo acknowledged that, "in all cases, everything we're seeing is tracking exactly the way we think it should be seen."

28.     On March 14, 2017, HD Supply issued a press release announcing its 2016 full year and fourth quarter financial results.[2]  In its press release, the Company discussed its outlook for fiscal year 2017, stating: "For fiscal year 2017, the company estimates end market growth of approximately 2-3 percent.  The company estimates 300 basis points of sales growth in excess of the estimated market growth and operating leverage in the range of 1.5 to 2.0 times for fiscal year 2017."

---

[2] The press release is titled "HD Supply Holdings, Inc. Announces Fiscal 2016 Full-Year and Fourth-Quarter Results."

29.   Also on March 14, 2017, the Company held its Q4 2016 earnings call with analysts and investors.  During the call, DeAngelo was asked about the rumored sale of the Company's Waterworks segment, a topic he swiftly deflected:

**David Manthey**

First off, regarding the rumors about Waterworks sale, I'm wondering if you have any comments regarding that possibility or just more generally how you view any other potential portfolio changes over the course of the next several years.

**Joseph J. DeAngelo**

Yeah, we've always had the same speck, David. So all of our businesses needed to be leadership businesses with a clear path to distant number one. So, we meet the criteria of leadership. We think we got the right stack of path to be a very distant number one in all three of our businesses. And we will operate only in North American markets, highly fragmented. So I think we are hitting the speck of where we are. Constantly, as people approach us, we'll always evaluate and approach and we'll see if that creates value for our associates and value for our shareholders. And that's consistent with what we've done over the last 10 years.

30.   During the March 14th conference call, Ryan Merkel sought clarification on the Company's operating leverage target for the year, stating: "***To hit the midpoint you are going to need operating leverage above 2x for the rest of the year . . . But I just wanted to clarify, is this what you are expecting for the second quarter to the fourth quarter, op[erating] leverage above 2 times?***" Defendant Levitt responded that, "[f]or the second quarter, we're expecting a

normalized operating leverage, so in the 1.5 to 2 times range." However, *in the third and fourth quarters, management expects operating leverage to "be at or above 2 times."* In a follow-up question, *Ryan Merkel inquired whether the pickup in operating leverage is mainly "a function of the Facilities Maintenance growth starting to pick back up once you get into the selling season and then the costs falling off in FM"* or whether there was anything else to consider. DeAngelo responded: "No. You're exactly right. The pickup in the sales, *the falloff of the costs*, our comparables year-over-year will get easier . . . ."

31.    The statements referenced in ¶¶25-30 were materially false and/or misleading because they misrepresented and failed to disclose material adverse facts pertaining to the Company's business and operations, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) HD Supply's full year 2017 growth and operational leverage targets were unattainable; (2) the operational recovery of its Facilities Maintenance supply chain was not going according to plan; (3) the Company was exploring the sale of its Waterworks segment; (4) Defendant DeAngelo, with full knowledge of the undisclosed materially adverse facts alleged herein, embarked on a selling spree of personal holdings of HD Supply stock that netted him over $54 million in proceeds; and (5) as a result of the foregoing,

13

Defendants' statements about HD Supply's business, operations, and prospects were false and misleading and/or lacked a reasonable basis. As a result of this fraudulent scheme, Defendants were able to artificially inflate the Company's financials throughout the Class Period.

**C.    The Truth Is Revealed**

32.    On June 6, 2017, the Company reported first quarter 2017 earnings per share of $0.63, $0.03 less than analysts' estimates. HD Supply also disclosed a plan to accelerate its investment spending in the FM segment "to extend [its] differentiated service model and focus on providing a customer-centric omni-channel experience." As a result, the Company will be redeploying working capital into the business, lowering its operating leverage below previously forecasted levels. Interestingly, HD Supply lowered its operating leverage targets without divulging any details about the size and extent of the FM investment spending, a decision that worried investors and analysts.

33.    On that same date, HD Supply also announced that it had entered into a definitive agreement to sell its Waterworks business unit, the nation's largest distributor of water, sewer, storm and fire protection products, for $2.5 billion in cash. As a result of the deal, labeled by management as "a transformational transaction for HD Supply," the Facilities Maintenance segment now represents

14

close to 75% of HD Supply's total adjusted EBITDA, a 20% increase.

34.    These disclosures contradicted recent statements by HD Supply's management on its two previous earnings conference calls.  DeAngelo and other members of management had previously and recently insisted that the Company was well positioned for success, particularly because it had already dealt with inventory issues and because it had already invested in technology and streamlining its operations.

35.    On June 6, 2017, pre-market, HD Supply executives held a conference call to discuss its first quarter 2017 financial results.  During the conference call, Defendant DeAngelo announced that William Stengel had been tasked with stabilizing and recovering the operational performance of "the facilities maintenance supply chain operation."   The Company plans to accomplish this feat through "accelerated expense investment" with the goal of "developing a next-generation customer-centric omni-channel environment for [its] customers."

36.    During the conference call, Evelyn Chow from Goldman Sachs asked management to "enumerate some of the drivers that" caused the Company to lower its operating leverage guidance from "previously anticipated" levels.  In response, Defendant Levitt asserted that HD Supply is "seeing pretty significant margin compression pressures," particularly within Rebar.  These pressures are expected to

15

continue "for the balance of the year."   William Stengel also highlighted that operating leverage at the FM segment may fall below previously forecasted levels as a result of "the incremental events . . . planned for the business."

37.   Also during the conference call, Ryan Merkel from William Blair asked management to "quantify the increased FM investment," but the Company's response was noncommittal and poorly explained:

**William Stengel**

Ryan, as far as the quantifying the amount of investment; ***the investments that we expect to incur this year is certainly included in the guidance that we've provided. We are going through and refining our vision and strategy with Karenann and so hesitant to give specific amounts on that investment at this point in time but it is a necessary investment in this business as expectations from customers are continuing to evolve and continuing to get more demanding***. So the level of execution that was satisfactory two or three years ago is no longer good enough and so we intend to lead the charge in this industry in providing the best customer experience in the multi-family industry. And so our investments will enable us to not only maintain share but continue to grow share faster than the market. And we believe that this is an evolution that is occurring in most industries today, if you're standing still, you're falling behind.

Ryan Merkel then asked Stengel to elaborate further, accentuating: "Maybe just to flush it out a little bit more, can you just give an example of the new customer expectation; I don't know what you're addressing there?"   Stengel once again stonewalled, asserting: "And you know, we need to continue to get better in all dimensions of when we're interacting with customers, how that experience goes, the

solutions we offer, the products that we sell to them, it's the whole range of it."

38.     As a result of these disclosures, HD Supply's share price declined $7.24 per share, or 17.5%, from a close of $41.27 per share on June 5, 2017 to a close of $34.03 per share on June 6, 2017.  HD Supply's share price continued trading lower the next day on unusually elevated trading volume, dropping an additional $1.22 per share, or 4%, to $32.81 per share on June 7, 2017—representing a two-day drop of over 20%.

39.     Analysts swiftly chastised the Company.  On June 7, 2017, Morgan Stanley downgraded HD Supply from Overweight to Equalweight, with analyst Nigel Coe emphasizing that the Company's estimates are "watered down."  Coe stressed that the Company will face difficulties outgrowing the underlying multi-family maintenance, repair, and operations market, and expressed skepticism about HD Supply's ability to achieve management's updated 2017 plan.

40.     On that same day, Robert W. Baird downgraded the Company to Neutral from Outperform, citing the disappointing performance of its Facilities Maintenance segment.  Drexel Hamilton also downgraded HD Supply from Buy to Hold.  RBC Capital Markets criticized management's transparency, asserting that ***"[t]he most troubling development was the new incremental FM spending that was unexpected and frankly poorly explained on the call."***

17

41.     On June 9, 2017, Deutsche Bank analyst John Inch downgraded HD Supply to Hold, ***asserting that management's credibility has now become an "impediment to a sustained higher share price."*** Inch further noted that the Company had lowered profit leverage targets and mentioned a sizeable increase in investment spending at its Facilities Maintenance segment, without providing details and magnitude. "Overall, it is unclear when the new elevated spending might subside, and could instead go on for years," stated Inch.

### D.     Improper Insider Selling During The Class Period

42.     As a direct result of Defendants' wrongful actions, HD Supply's common stock traded at artificially inflated prices throughout the Class Period. Defendants' wrongful conduct and their dissemination of false and misleading statements enabled Defendant DeAngelo, one of the Company's largest holders at the time, to engage in improper insider trading.

43.     Due to DeAngelo's desire to dump his shares of HD Supply into the public market, the Company was caused to make false and misleading statements that artificially inflated the price of the shares during the Class Period, and the price at which DeAngelo was able to sell his shares.

44.     On March 6, 2017, DeAngelo began selling a substantial amount of his HD Supply shares. Between March 29 and April 4, 2017, DeAngelo, trading on

inside information, disposed of approximately 80% of his shares.  At the time, DeAngelo knew that HD Supply's first quarter earnings would be lackluster, the Company's FM segment was facing significant obstacles and in desperate need of a capital injection, and that the Company was divesting its Waterworks business unit. Retail investors were not privy to this information until June 6, 2017.  DeAngelo's stock sales during the Class Period as are follows:

| Date | Shares | Price | Amount | Type |
|------|--------|-------|--------|------|
| 03/06/17 | 16,785 | $42.60 | $715,023 | Tax Witholding |
| 03/29/17 | 300,000 | $40.39 | $12,115,530 | 10b5(1) |
| 03/30/17 | 300,000 | $41.09 | $12,326,070 | 10b5(1) |
| 03/31/17 | 300,000 | $41.28 | $12,384,390 | 10b5(1) |
| 04/03/17 | 300,000 | $40.52 | $12,156,960 | 10b5(1) |
| 04/04/17 | 112,145 | $40.27 | $4,515,956 | 10b5(1) |
| | **1,328,930** | | **$54,213,928** | |

## V.   CLASS ACTION ALLEGATIONS

45.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired HD Supply securities during the Class Period and who were damaged thereby (the "Class").  Excluded from the Class are Defendants,

members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of HD Supply and the directors, officers and employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

46.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Throughout the Class Period, HD Supply's securities were actively traded on the NASDAQ, an open and efficient market, under the symbol "HDS."  Millions of HD Supply shares were traded publicly during the Class Period on the NASDAQ.  As of June 2, 2017, HD Supply had 202,659,525 shares of common stock outstanding. Record owners and the other members of the Class may be identified from records maintained by HD Supply and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

47.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

48.     Plaintiff will fairly and adequately protect the interests of the other members of the Class, and has retained counsel competent and experienced in class and securities litigation.

49.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

> a)     whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;
>
> b)     whether Defendants participated in and pursued the common course of conduct complained of herein;
>
> c)     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, and prospects of HD Supply;
>
> d)     whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to

21

disclose material facts about the business, finances, value, performance and prospects of HD Supply;

e)    whether the market price of HD Supply common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)    the extent to which the members of the Class have sustained damages and the proper measure of damages.

50.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VI.    UNDISCLOSED ADVERSE FACTS

51.    The market for HD Supply's securities was an open, well-developed and efficient market at all relevant times.  As a result of these materially false and misleading statements and failures to disclose described herein, HD Supply's securities traded at artificially inflated prices during the Class Period.  Plaintiff and

the other members of the Class purchased or otherwise acquired HD Supply's securities relying upon the integrity of the market price of the Company's securities and market information relating to HD Supply, and have been damaged thereby.

52.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of HD Supply's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, as well as its business, accounting, financial operations and prospects, as alleged herein.

53.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about HD Supply's financial well-being and prospects.

54.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and

23

its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements made during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## VII.  <u>LOSS CAUSATION</u>

55.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of HD Supply's securities and operated as a fraud or deceit on Class Period purchasers of HD Supply's securities by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information.  When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of HD Supply's securities fell precipitously as the prior inflation came out of the Company's stock price.  As a result of their purchases of HD Supply's securities during the Class Period, Plaintiff and the other Class members suffered economic loss.

56.    By failing to disclose the true state of the Company's financial statements, investors were not aware of the true state of the Company's financial status.  Therefore, Defendants presented a misleading picture of HD Supply's

business practices and procedures. Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused HD Supply to conceal the truth.

57.    Defendants' false and misleading statements had the intended effect and caused HD Supply's common stock to trade at artificially inflated levels throughout the Class Period. The stock price drops discussed herein caused real economic loss to investors who purchased the Company's securities during the Class Period.

58.    The decline in the price of HD Supply's common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of HD Supply's common stock price declines negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of HD Supply's securities and the subsequent decline in the value of HD Supply's securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## VIII.  <u>SCIENTER ALLEGATIONS</u>

59.     As alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

60.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding HD Supply, their control over, receipt and/or modification of HD Supply's allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning HD Supply, participated in the fraudulent scheme alleged herein.

## IX.    <u>APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE</u>

61.     At all relevant times, the market for HD Supply's securities was an efficient market for the following reasons, among others:

a)   HD Supply securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

b)   As a regulated issuer, HD Supply filed periodic public reports with the SEC and the NASDAQ;

c)   HD Supply securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace; and

d)   HD Supply regularly issued press releases which were carried by national newswires.   Each of these releases was publicly available and entered the public marketplace.

62.   As a result of the foregoing, the market for HD Supply's securities promptly digested current information regarding HD Supply from all publicly available sources and reflected such information in HD Supply's stock price. Under these circumstances, all purchasers of HD Supply's securities during the Class Period suffered similar injury through their purchase of HD Supply's securities at artificially inflated prices and a presumption of reliance applies.

27

63.     A Class-wide presumption of reliance is also appropriate in this action under the U.S. Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because Plaintiff's fraud claims are grounded in Defendants' omissions of material fact of which there is a duty to disclose. As this action involves Defendants' failure to disclose material adverse information regarding HD Supply's business practices, financial results and condition, and the Company's internal controls—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered such information important in the making of investment decisions.

## X.     NO SAFE HARBOR

64.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that

could cause actual results to differ materially from those in the purportedly forward-looking statements.

65.    In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of HD Supply who knew that the statement was false when made.

## XI.    COUNTS AGAINST DEFENDANTS

### COUNT I
### Violation of Section 10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

66.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is asserted against all Defendants.

67.    During the Class Period, HD Supply and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of HD Supply securities; and (iii) cause Plaintiff and the other

29

members of the Class to purchase HD Supply securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

68.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for HD Supply securities in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.   Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.   The Individual Defendants are also sued herein as controlling persons of HD Supply, as alleged herein.

69.     In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-X (17 C.F.R. § 210.01, *et seq.*) and S-K (17 C.F.R.

§ 229.10, *et seq*.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

70.     HD Supply and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of HD Supply as specified herein.  These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of HD Supply's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts, and omitting to state material facts necessary in order to make the statements made about HD Supply and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business

which operated as a fraud and deceit upon the purchasers of HD Supply's securities during the Class Period.

71.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other, and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

72.     These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them.  Such Defendants' material misrepresentations

and/or omissions were done knowingly or recklessly, and for the purpose and effect of concealing HD Supply's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its common stock.   As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

73.   As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of HD Supply securities was artificially inflated during the Class Period.   In ignorance of the fact that the market price of HD Supply shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class

acquired HD Supply securities during the Class Period at artificially inflated high prices and were damaged thereby.

74.     At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of HD Supply, which were not disclosed by Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired HD Supply securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

75.     By virtue of the foregoing, HD Supply and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.     As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## COUNT II
### Violation of Section 20(a) of the Exchange Act
### Against The Individual Defendants

77.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34

78.     The Individual Defendants were and acted as controlling persons of HD Supply within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

80.     As set forth above, HD Supply and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this

Complaint.  By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment as follows:

a)   Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)   Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

c)   Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)   Awarding such other relief as this Court deems appropriate.

## XIII. **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: July 10, 2017                    Respectfully Submitted,

**LINDSEY & LACY, PC**
*/s/ W. Thomas Lacy*
W. Thomas Lacy
Georgia Bar No. 431032
2002 Commerce Dr. N. Suite 300
Peachtree City, GA 30269
Telephone: (770) 486-8445
Facsimile: (770) 486-8889
tlacy@llptc.com

*Local Counsel for Plaintiff City of Hollywood Police Officers' Retirement System*

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker
5200 Town Center Circle
Suite 601
Boca Raton, FL 33486
Telephone: (561) 394-3399
Facsimile:  (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

-and-

37

Steven B. Singer
4 West Red Oak Lane, Suite 312
White Plains, New York 10604
Telephone: (914) 437-8551
Facsimile:  (888) 631-3611
ssinger@saxenawhite.com

*Counsel for Plaintiff City of Hollywood Police Officers' Retirement System*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Stuart A. Kaufman
7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
stu@robertdklausner.com

*Additional Counsel for Plaintiff City of Hollywood Police Officers' Retirement System*