**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

_____

| | |
|---|---|
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated, | ) ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HD SUPPLY HOLDINGS, INC., JOSEPH J. DEANGELO, and EVAN J. LEVITT, | ) ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NO.
1:17-CV-02587-ELR

_____

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE SOUTH FLORIDA PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF COUNSEL**

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT ......................................................1

II.  SUMMARY OF THE PENDING ACTION ...................................5

III.  ARGUMENT .....................................................................................7

    A.  The South Florida Pension Funds Should Be Appointed Lead

        Plaintiff ..................................................................................7

        1.  The South Florida Pension Funds Have Timely Filed

            Their Motion .............................................................8

        2.  The South Florida Pension Funds Have The Largest

            Financial Interest In The Relief Sought By The Class ..............8

        3.  The South Florida Pension Funds Satisfy The

            Requirements Of Rule 23...........................................9

    B.  The South Florida Pension Funds are Precisely the Type of

        Lead Plaintiff Envisioned by Congress................................12

    C.  The Court Should Approve the South Florida Pension Funds'

        Selection Of Counsel...........................................................16

IV.  CONCLUSION...............................................................................20

i

# TABLE OF AUTHORITIES

**Cases**

*Belmont Holdings Corp. v. Suntrust Banks, Inc*.,
  2009 WL 3188695 (N.D. Ga. Sept. 29, 2009)............................................. *passim*

*Eastwood Enterprises v. Farha*,
  2008 WL 687351 (M.D. Fla. Mar. 11, 2008) ................................................ 12, 16

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,*
  2007 WL 170556 (M.D. Fla. Jan. 18, 2007) .......................................................13

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) .............................................................................9

*In re Theragenics Corp. Sec. Litig*.,
  205 F.R.D. 687 (N.D. Ga. 2002) .........................................................................10

*Lane v. Page*,
  250 F.R.D. 634 (D.N.M. 2007)...........................................................................16

*Newman v. Eagle Building Technologies,*
  209 F.R.D. 499 (S.D. Fla. 2002)..........................................................................13

*Plumbers & Pipefitters Local 51 Pension Fund v. Darden Restaurants*, *Inc*.,
  2008 WL 2608111 (M.D. Fla. July 1, 2008) ........................................................13

*Prado-Steiman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ..........................................................................10

*Plymouth County Ret. Sys. v. Carter's, Inc*.,
  2009 U.S. Dist. LEXIS 20582, at *3 (N.D. Ga. 2009) ........................................12

**Statutes**

15 U.S.C. § 78u-4(a) ........................................................................... *passim*

15 U.S.C. §§ 78j(b) and 78t(a) ...............................................................2

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................... *passim*

*See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ...................................................................................12

The City Pension Fund for Firefighters & Police Officers in the City of Miami Beach ("Miami Beach F&P"), Pembroke Pines Pension Fund for Firefighters and Police Officers ("Pembroke Pines F&P"), and Hollywood Police Officers' Retirement System ("Hollywood Police," and together with Miami Beach F&P and Pembroke Pines F&P, the "South Florida Pension Funds" or "Movants") respectfully submit this memorandum of law in support of their motion for: (1) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (2) approval of their selection of Saxena White P.A. ("Saxena White") to serve as Lead Counsel for the Class and Lindsey & Lacy, PC ("Lindsey & Lacy") to serve as Local Counsel for the Class.

## I.    PRELIMINARY STATEMENT

On July 10, 2017, Hollywood Police filed the present case (the "Action") against HD Supply Holdings, Inc. ("HD Supply" or the "Company") and certain of its senior officers (collectively, "Defendants").   The Action alleges that, from November 9, 2016 through June 5, 2017 (the "Class Period"), Defendants defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act,

15 U.S.C. §§ 78j(b) and 78t, and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant or group of movants has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movants have made a *prima facie* showing that they are typical and adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The South Florida Pension Funds are the "most adequate plaintiff" and should be appointed Lead Plaintiff. The South Florida Pension Funds sustained losses of $1,918,485 in connection with their Class Period investments in HD Supply securities. The South Florida Pension Funds' losses are believed to be the largest among purported class members seeking appointment as Lead Plaintiff that otherwise satisfy the requirements of the PSLRA and the Federal Rules of Civil Procedure.[1] Movants are unaware of any other Class member that has filed an

---

[1] Movants' transactions in HD Supply securities during the Class Period are set forth in the certifications attached as Exhibit B to the Declaration of Joseph E. White, III in Support of the Motion of the South Florida Pension Funds for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel ("White Decl.").

2

action or an application for appointment as Lead Plaintiff that sustained greater financial losses and meets the applicable requirements.[2]

In addition to asserting the largest financial interest, the South Florida Pension Funds readily satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure because their claims are typical of all members of the Class, and they will fairly and adequately represent the Class members.

Moreover, the South Florida Pension Funds, which collectively manage over $1.6 billion in assets, are the ideal Lead Plaintiff contemplated by the PSLRA.  *See Belmont Holdings Corp. v. Suntrust Banks, Inc*., 2009 WL 3188695, at *2 (N.D. Ga. Sept. 29, 2009) ("the PSLRA favors institutional investors with large amounts at stake") (citations and quotations omitted).  Indeed, the South Florida Pension Funds are a paradigmatic Lead Plaintiff under the PSLRA because its members have extensive experience serving as fiduciaries, and are sophisticated institutional investors with a substantial financial interest in the litigation, which provides the incentive and ability to effectively and efficiently supervise and monitor counsel.

Further, as set forth in greater detail in the Joint Declaration submitted herewith, the South Florida Pension Funds share a professional relationship that

---

[2] Charts setting forth the South Florida Pension Funds' losses are attached as Exhibit C to the White Decl.

predates this litigation and fully understand the Lead Plaintiff's obligations to the class under the PSLRA, and are willing and able to undertake those responsibilities to ensure the vigorous prosecution of this action.[3]   Moreover, prior to seeking a role as Lead Plaintiff, representatives of the South Florida Pension Funds held a joint conference call to discuss the merits of the claims against Defendants, the significant losses the Funds incurred, as well as the Funds' common goals in maximizing the recovery for all HD Supply investors.  Joint Decl. ¶9.

The South Florida Pension Funds have also demonstrated their adequacy through their selection of Saxena White, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class.   Accordingly, based on the South Florida Pension Funds' substantial financial interest and their demonstrated commitment and ability to jointly oversee this action in a cohesive manner, the South Florida Pension Funds respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

---

[3] *See* Joint Declaration in Support of the Motion of the South Florida Pension Funds for Appointment as Lead Plaintiff and Approval of Their Selection of Counsel ("Joint Decl."), White Decl., Ex. D.

## II.    SUMMARY OF THE PENDING ACTION[4]

HD Supply is one of the largest industrial distributors in North America.  ¶2. The Company provides a broad range of products and services to approximately 500,000 professional customers in the maintenance, repair and operations, infrastructure and power and specialty construction sectors.  *Id*.

In early 2016, HD Supply's Facilities Maintenance ("FM") segment began experiencing a number of supply chain deficiencies.  ¶4.  The Company initially failed to properly calculate the demand for its products, leaving it undersupplied in advance of the 2016 spring and summer selling sessions.  *Id*.  When management noticed the Company's product shortfall, it took remedial action to adjust ordering, a decision that led to an unreasonably large buildup of inventory.  *Id*.  As a result, HD Supply's distribution centers were stretched beyond capacity during the latter part of 2016.  *Id*.

In November 2016, Defendants began touting that the Facilities Maintenance recovery was on track and that the Company was "perfectly positioned to enter 2017 and deliver on [its] commitments of 300 basis points more than market, one-and-a-half times operating leverage and 75% cash generation."

---

[4] All "¶" references refer to the complaint filed by Hollywood Police in *City of Hollywood Police Officers' Retirement System v. HD Supply Inc., et al*., Case No. 17-cv-02587-ELR (N.D. Ga.).

¶5.  Throughout the Class Period, Defendants continued making similar statements, going so far as to assert that HD Supply's operating leverage would drastically increase in the second half of 2017 due to lower costs in the FM segment.  *Id.*

However, on June 6, 2017, HD Supply reported first quarter 2017 earnings that missed analyst estimates; announced increased capital investments in its FM segment; and lowered its full year 2017 outlook.  ¶6.  Given the sizeable increase in FM investment spending, HD Supply was forced to reduce its operating leverage targets for full year 2017—a widely followed metric in the industrial product supply industry.  *Id.*  The announced increase in FM investment spending caught analysts and investors by surprise, particularly since the Company had stated on multiple occasions that its inventory setbacks were a thing of the past and that substantial investment in technology and operations had already been made by the Company. *Id.*

As a result of these disclosures, the Company's share price declined $7.24 per share, or 17.5%, from a close of $41.27 per share on June 5, 2017 to a close of $34.03 per share on June 6, 2017—wiping out over $1.4 billion in market capitalization in one day.  ¶7.  HD Supply's share price continued trading lower the next day on unusually elevated trading volume, dropping an additional $1.22 per

share, or 4%, to $32.81 per share on June 7, 2017—representing a two-day drop of over 20%. *Id.*

In advance of these disclosures, and over the course of just one week, between March 29, 2017 and April 4, 2017, inclusive, Defendant Joseph DeAngelo ("DeAngelo") sold over 1.3 million HD Supply shares for proceeds of nearly $54 million. ¶8.   At the time DeAngelo disposed of his shares, Company insiders were fully aware of this negative information, yet failed to inform investors of the drastic increase in capital investments or the substantial likelihood that one of its main lines of business would be sold. *Id.*  Instead, DeAngelo massively dumped shares at artificially inflated prices, grossing tens of millions of dollars prior to revealing the truth to the investing public. *Id.*

## III.   ARGUMENT

### A.   <u>The South Florida Pension Funds Should Be Appointed Lead Plaintiff</u>

The South Florida Pension Funds respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members."   15 U.S.C. § 78u-4(a)(3)(B).   The PSLRA sets forth the procedure for selecting the Lead Plaintiff in class actions arising under the federal securities laws, and provides a presumption in favor of the "person or group of persons" which has the "largest financial interest" in the relief

7

sought by the Class, while also satisfying the relevant requirements of Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, the South Florida Pension Funds believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### 1. The South Florida Pension Funds Have Timely Filed Their Motion

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of the notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). The South Florida Pension Funds' motion is therefore timely as it was filed within 60 days of the publication of the notice filed on July 11, 2017. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II); White Decl. Ex. A.

### 2. The South Florida Pension Funds Have The Largest Financial Interest In The Relief Sought By The Class

The South Florida Pension Funds should be appointed Lead Plaintiff because they have the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). As set forth herein, the South Florida Pension Funds purchased 192,385 shares of HD Supply common stock during the Class Period at prices artificially inflated by the materially false and misleading statements issued by Defendants. In addition, the South Florida Pension Funds

8

incurred substantial losses from their transactions in HD Supply securities during the Class Period totaling $1,918,485 when corrective disclosures removed the inflation caused by the Defendants' fraud.  *See* White Decl., Exs. B and C.

To the best of the South Florida Pension Funds' knowledge, there are no other applicants who have sought, or are seeking, Lead Plaintiff appointment that have a larger financial interest arising from transactions in HD Supply common stock during the Class Period.  Accordingly, the South Florida Pension Funds have the largest financial interest of any qualified movant seeking Lead Plaintiff status, and are the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3. The South Florida Pension Funds Satisfy The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the South Florida Pension Funds otherwise satisfy the adequacy and typicality requirements of Fed. R. Civ. P. 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Belmont Holdings*, 2009 WL 3188695, at *2;  *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) ("a proposed lead plaintiff need only make a 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23") (citations omitted).  Here, the South Florida Pension Funds indisputably satisfy the typicality and adequacy requirements.

9

The South Florida Pension Funds' claims are typical of the claims of other purchasers of HD Supply securities.  Typicality exists where the claims of the representative plaintiff "share 'the same essential characteristics as the claims of the class at large.'"  *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 n. 14 (11th Cir. 2000).  "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences."  *Id*. (quotations omitted); *see also In re Theragenics Corp. Sec. Litig*., 205 F.R.D. 687, 695 (N.D. Ga. 2002) ("A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.").

Here, the South Florida Pension Funds' and all other Class members' claims arise from the same course of events, and their legal arguments to establish Defendants' liability are nearly identical.  Indeed, like all other Class members, the South Florida Pension Funds: (1) purchased HD Supply securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby.  Like all members of the Class, the South Florida Pension Funds seek to recover for losses incurred as a result of Defendants' misrepresentations and omissions that cause HD

Supply's share price to decline.  As such, the South Florida Pension Funds are typical Class representatives.

The South Florida Pension Funds similarly satisfy the adequacy requirement of Rule 23.  Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is "satisfied if there is no conflict of interest between the representative and the class and if it is evident that the representative will adequately pursue prosecution of the lawsuit."  *Belmont Holdings*, 2009 WL 3188695, at *2 (concluding that institutional investor had the "experience and resources to vigorously pursue the claims of the class"). The South Florida Pension Funds satisfy these requirements because their substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class' claims.  The South Florida Pension Funds' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way.  Further, there are no facts to suggest any actual or potential conflict of interest or other antagonism between the South Florida Pension Funds and the other Class members.

Finally, the South Florida Pension Funds have demonstrated their adequacy through their selection of Saxena White as Lead Counsel to represent the Class in

11

this action.  As discussed more fully below, Saxena White is highly qualified and experienced in the area of securities class action litigation.

> ### B.    The South Florida Pension Funds are Precisely the Type of Lead Plaintiff Envisioned by Congress

The South Florida Pension Funds are the very sort of Lead Plaintiff envisioned by Congress in their enactment of the PSLRA—a small, sophisticated group of institutional investors with a substantial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Belmont Holdings*, 2009 WL 3188695, at *2 ("the PSLRA 'favors institutional investors with large amounts at stake'")(quoting *Plymouth County Ret. Sys. v. Carter's, Inc*., 2009 U.S. Dist. LEXIS 20582, at *3 (N.D. Ga. 2009)).

The appointment of a group of class members as Lead Plaintiff is expressly permitted by the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Numerous district courts within the Eleventh Circuit have repeatedly recognized the propriety of appointing groups of investors that are capable of "fairly and adequately serv[ing] as the lead plaintiff." *Eastwood Enterprises v. Farha*, 2008 WL 687351, at *2 (M.D. Fla. Mar. 11, 2008) ("District courts within the Eleventh Circuit have

allowed aggregation of a group's loss in order to determine whether the group is the presumptively most adequate plaintiff.") (citing *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,* 2007 WL 170556, at *2 (M.D. Fla. Jan. 18, 2007); *Newman v. Eagle Building Technologies,* 209 F.R.D. 499, 503–04 (S.D. Fla. 2002)); *Plumbers & Pipefitters Local 51 Pension Fund v. Darden Restaurants, Inc.,* 2008 WL 2608111, at *1-2 (M.D. Fla. July 1, 2008) ("The idea that plaintiffs may aggregate their losses into a group to show the largest financial interest derives from the language of the PSLRA which states that the most adequate plaintiff is the 'person or group of persons.'") (citations and quotations omitted).

As set forth in the Joint Declaration submitted herewith, the South Florida Pension Funds have demonstrated their commitment to working cohesively as a group in the prosecution of this action in order to achieve the best possible result for the Class. *See* Joint Decl. ¶¶5-12. Indeed, the South Florida Pension Funds are a small, cohesive partnership of sophisticated institutional investors that determined to jointly seek appointment as Lead Plaintiff and litigate this action in the best interests of all Class members. *See id.*

The Joint Declaration also sets forth the reasons why the South Florida Pension Funds decided to collaborate in this litigation and describes how the group was formed. *See id.* Specifically, Hollywood Police and its counsel Saxena White

13

investigated investors' claims against Defendants, filed the case at bar, and published notice of the pendency of the action. *Id.* ¶¶6-7. After being apprised of the pendency of the Action and their corresponding losses, Miami Beach F&P and Pembroke Pines F&P discussed with their counsel, Saxena White, whether Hollywood Police would be interested in jointly prosecuting this case. *Id.* ¶7. Through these discussions, Miami Beach F&P, Pembroke Pines F&P, and Hollywood Police learned of their shared interest in prosecuting this case and determined that their joint prosecution of this case will advance the interests of the Class. *Id.* In coming to this determination, the Funds recognized that they are like-minded Florida-based pension funds that suffered substantial harm as a result of their investments in HD Supply common stock. *Id.* ¶¶5-8. Indeed, the Funds have a preexisting professional relationship that predates this litigation, and the same investment manager purchased HD Supply common stock for all three Funds during the Class Period. *Id.* ¶5.

Based on the Funds' prior experience litigating securities class actions, the South Florida Pension Funds believe that their partnership will add substantial value to the prosecution of this action and will benefit the Class. The South Florida Pension Funds also determined to seek joint appointment as Lead Plaintiff as a result of their shared goals and interests as institutional investors to protect and

14

maximize the value of pension fund assets, advance shareholder rights, and promote strong corporate governance. *Id.* ¶8.

Significantly, the Joint Declaration also demonstrates that the South Florida Pension Funds have already taken (and will continue to take) measures to ensure the vigorous prosecution of this action and oversee counsel. *Id.* ¶¶6, 9-12. Specifically, to formalize their leadership of the action, before seeking appointment as Lead Plaintiff, representatives of the South Florida Pension Funds participated in a conference call and discussed together, among other things: the strength of the claims against Defendants; their losses arising from Defendants' misconduct; a strategy for prosecuting this action; the benefits that the class will receive from the leadership of a coordinated group of institutional investors that have prior experience serving as Lead Plaintiff under the PSLRA; the interests in prosecuting the case in a collaborative, likeminded manner and maximizing the recovery for the Class; and the actions each institution has and will continue to take to ensure that the Class' claims will be zealously and efficiently litigated. *Id.* ¶¶9-10.

The evidence submitted by the South Florida Pension Funds demonstrating their commitment to vigorously and effectively representing the interests of the

Class as a Lead Plaintiff group is more than sufficient to satisfy the adequacy and typicality requirements.

**C.**     **The Court Should Approve the South Florida Pension Funds' Selection Of Counsel**

The Court should approve the South Florida Pension Funds' selection of Saxena White as Lead Counsel on behalf of the Class. Pursuant to the PSLRA, a movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent, and the Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see Eastwood Enterprises*, 2008 WL 687351, at *4 ("[t]he PSLRA vests the authority in the lead plaintiff to select and retain lead counsel"); *Lane v. Page*, 250 F.R.D. 634, 640 (D.N.M. 2007)("Courts recognize that, while the appointment of counsel is subject to the court's approval, selecting a lawyer in whom a litigant has confidence is an important client prerogative and ... the PSLRA clearly leaves the choice of class counsel in the hands of the lead plaintiff.")(citations and quotations omitted). Here, the South Florida Pension Funds retained Saxena White as proposed Lead Counsel and Lindsey & Lacy as proposed Local Counsel to represent the Class.

As demonstrated by their firm resume,[5] Saxena White has extensive experience in successfully prosecuting complex litigation on behalf of shareholders and is lead or co-lead counsel in major securities class and derivative actions nationwide.  In terms of the benefits conferred upon Saxena White's clients, the firm has achieved resounding successes on behalf of shareholders nationwide as Saxena White's efforts in investor-related litigations have resulted in significant monetary benefits and corporate governance reforms.  *See*, *e.g.*, *In re Bank of America Corp. Securities Derivative, and ERISA Litigation*, 09-md-2058-PKC (S.D.N.Y.) ($62.5 million recovery on behalf of nominal defendant and adoption of significant corporate governance reforms); *In re Tower Group International Ltd. Securities Litigation*, 1:13-cv-5852-AT (S.D.N.Y.) ($20.5 million recovery for shareholders against the Tower Defendants); *Central Laborers' Pension Fund v. SIRVA, Inc.*, 04 C 7644 (N.D. Ill.) ($53.3 million recovery and important corporate governance reforms); *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose, S.A., et al.*, No. 1:08-cv-23317-JAL (S.D. Fla. July 17, 2013) ($37.5 million settlement for shareholders in a securities fraud action against Aracruz Celulose, S.A.); *In re Sadia S.A. Securities Litigation*,

---

[5] *See* Saxena White's Firm Biography, attached as Exhibit E to the White Decl.

08-cv-09528-SAS (S.D.N.Y.) ($27 million settlement for shareholders in a securities fraud action against Sadia, S.A.).

In addition, judges around the country have recognized that Saxena White has the experience and resources necessary to successfully and efficiently prosecute complex class litigation as Lead and Co-Lead Counsel.  For example, in *Schuler v. NIVS Intellimedia Technology Group, Inc.*, No. 11-cv-2484 (KMW) (Mar. 19, 2015), Judge Wood, in commending Saxena White's "excellent representation of the class," noted that "Saxena White's work has been outstanding" and "impressively thorough."  In *In re Goldman Sachs Group, Inc. Derivative Litig*., Master File No. 10 Civ. 3614-PAC (S.D.N.Y.), Judge Crotty appointed Saxena White as sole Lead Counsel amongst numerous firms, and specifically noted that "Saxena White is well qualified to play their role as lead counsel.  The pleadings it filed in this matter, including the motion papers, are competent and professional."   On October 24, 2013, in *In re Maxwell Technologies, Inc*., No. 3:13-cv-00580-BEN (S.D. Cal.), the Honorable Roger Benitez appointed Saxena White as Lead Counsel, and stated that "Saxena White has extensive experience litigating securities class actions, and has successfully prosecuted numerous securities fraud class actions on behalf of investors." Further, in *In re Bank of America Corp. Securities, Derivative and ERISA*

18

*Litigation*, No. 09-MD-2058 (S.D.N.Y.), Saxena White was appointed as Co-Lead Counsel, with former Southern District of New York Judge Chin expressly noting that Saxena White is "experienced and qualified to serve as lead counsel."

Accordingly, Saxena White has built an impressive track record of professional and efficient shareholder representation in complex securities actions. In sum, Saxena White has the skill and knowledge that will enable it to prosecute this action effectively and expeditiously.

The South Florida Pension Funds have also selected Lindsey & Lacy to serve as Local Counsel.  Lindsey & Lacy has extensive experience prosecuting complex litigation, and will serve to facilitate the litigation on a local level.  *See* Lindsey & Lacy Resume attached as Exhibit F to the White Decl.

Because there is nothing to suggest that Movants or their counsel will not fairly and adequately represent the Class, or that Movants are subject to unique defenses—which is the only evidence that can rebut the presumption of inadequacy under the PSLRA—this Court should appoint Movants as Lead Plaintiff and approve their selection of Saxena White as Lead Counsel and Lindsey & Lacy as Local Counsel for the Class.

## IV. CONCLUSION

For the reasons discussed above, the South Florida Pension Funds respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve their selection of Saxena White as Lead Counsel and Lindsey & Lacy as Local Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated:  September 11, 2017

Respectfully Submitted,

**LINDSEY & LACY, PC**
*/s/ W. Thomas Lacy*
W. Thomas Lacy
Georgia Bar No. 431032
2002 Commerce Dr. N. Suite 300
Peachtree City, GA 30269
Telephone: (770) 486-8445
Facsimile: (770) 486-8889
tlacy@llptc.com

*Local Counsel for Proposed Lead Plaintiff the South Florida Pension Funds*

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker
5200 Town Center Circle
Suite 601
Boca Raton, FL 33486
Telephone: (561) 394-3399

Facsimile:  (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

-and-

Steven B. Singer
4 West Red Oak Lane, Suite 312
White Plains, New York 10604
Telephone: (914) 437-8551
Facsimile:  (888) 631-3611
ssinger@saxenawhite.com

***Counsel for Proposed Lead Plaintiff
the South Florida Pension Funds***

21

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

Undersigned counsel hereby certifies that the text of this submission has been prepared in Times New Roman typeface, 14 point, consistent with this Court's requirements in Local Rule 5.1(C).

*/s/ W. Thomas Lacy*
W. Thomas Lacy
Georgia Bar No. 431032
Lindsey & Lacy, PC
2002 Commerce Dr. N. Suite 300
Peachtree City, GA 30269
Telephone: (770) 486-8445
Facsimile: (770) 486-8889
tlacy@llptc.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on September 11, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 11, 2017.

*/s/ W. Thomas Lacy*
W. Thomas Lacy

23