UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---

IN RE HD SUPPLY HOLDINGS, INC.      )     CONSOLIDATED CASE
SECURITIES LITIGATION,              )     NO. 1:17-CV-02587-ELR
                                    )

---

## DEFENDANTS' ANSWER AND DEFENSES TO THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Defendants HD Supply Holdings, Inc. ("HD Supply" or the "Company"), Joseph J. DeAngelo, and Evan J. Levitt (the "Individual Defendants") (the Company and the Individual Defendants are collectively referred to as "Defendants"), by and through their undersigned counsel, hereby answer the Consolidated Amended Class Action Complaint ("Complaint") filed by Lead Plaintiffs City Pension Fund for Firefighters & Police Officers in the City of Miami Beach, Pembroke Pines Pension Fund for Firefighters and Police Officers, and Hollywood Police Officers' Retirement System (collectively "Plaintiffs") as follows:

Plaintiffs' Complaint is far from the "short and plain statement" required by Federal Rule of Civil Procedure 8(a)(2). To the contrary, the Complaint spans 81 pages and contains 170 paragraphs. Defendants have attempted to answer the Complaint within the letter and spirit of the Federal Rules of Civil Procedure. By

answering the Complaint, Defendants do not concede that any of its allegations are proper bases of liability or foundations for discovery.

Unless otherwise indicated, the answers and defense contained herein are on behalf of all Defendants. However, to the extent that certain allegations are specifically directed toward one or more of the Individual Defendants, those other Individual Defendants to whom the allegations are not directed, unless otherwise stated in this Answer, lack knowledge or information sufficient to form a belief as to the truth of the allegations. Moreover, to the extent that any Defendant admits any allegations, as set forth below, such admission is made subject to the following qualification: Except where the allegation specifically refers to a Defendant by name, any admission by Defendants to any allegation is made based on information and belief.

The Complaint contains numerous allegations purporting to characterize or partially quote statements from HD Supply's press releases, investor conference calls, and public filings with the United States Securities and Exchange Commission (the "SEC"), as well as statements by third parties who are not parties to this suit. Defendants refer to the HD Supply press releases, transcripts of HD Supply investor conference calls, and HD Supply public filings with the SEC for their complete contents and deny any allegations to the extent that they

mischaracterize, misquote, or are contradicted by the cited document(s).   In accordance with Rule 8(b)(5), Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff has completely and accurately alleged the contents of the various statements by third parties to which the allegations refer.  Defendants therefore refer to each such document for a statement of its complete contents and deny such allegations to the extent that they mischaracterize, misquote, or are contradicted by the cited document(s).

The Complaint contains unnumbered paragraphs and/or statements that Defendants are not required to admit or deny.  To the extent a response is required, Defendants deny all such unnumbered paragraphs and/or statements.  Pursuant to Rule 8(b)(3), unless expressly admitted below, all contents of the Complaint, including the allegations in the numbered paragraphs, headings, titles, charts, graphs, footnotes, preamble, Table of Contents, Prayer for Relief and Jury Demand are denied.

Defendants answer the Complaint's separately numbered paragraphs as follows:

1.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

2.     Admit that Plaintiffs purport to bring this action on behalf of

themselves and all persons or entities who purchased or otherwise acquired the common stock of HD Supply between November 9, 2016 and June 5, 2017 (the "Class Period"). Deny that Plaintiffs' claims have any merit and deny that the putative class should be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure. Deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

3.     Admit the allegations in the first sentence of this paragraph. Deny all remaining allegations in this paragraph, except refer to HD Supply's SEC filings for discussion of the Company's business segments and results of operations and refer to HD Supply's Class Period SEC filings, press releases, and public earnings conference call transcripts for their contents.

4.     Deny the allegations in this paragraph, except refer to HD Supply's Class Period SEC filings, press releases, and public earnings conference call transcripts for their contents and refer to HD Supply's corporate website for statements about the Company's Facilities Maintenance ("FM") business.

5.     Deny the allegations in this paragraph, except refer to HD Supply's Class Period SEC filings, press releases, and public earnings conference call transcripts for discussion of the corrective actions HD Supply FM undertook to address the effects of inventory-related congestion within its distribution system

caused by a failure to timely order product in advance of its 2016 selling season (referred at various places throughout this Answer as the "the 2016 HD Supply FM inventory-related recovery effort").

6.     Deny the allegations in the first two sentences of this paragraph, except refer to HD Supply's Class Period SEC filings, press releases, and public earnings conference call transcripts for discussion about the 2016 HD Supply FM inventory-related recovery effort.  Admit that Mr. DeAngelo appeared and spoke at the Robert W. Baird Global Industrial Conference (the "Baird Conference") on November 9, 2016.  Deny the remaining allegations in this paragraph, except refer to the transcript of the Baird Conference for its contents.

7.     Admit that Mr. Levitt appeared and spoke at the Barclays Industrial Select Conference (the "Barclays Conference") on February 22, 2017. Deny the remaining allegations in this paragraph, except refer to the transcript of the Barclays Conference for its contents and refer to publicly available data regarding HD Supply's stock price history.

8.     Deny the allegations in this paragraph, except admit that shares of HD Supply stock were sold on Mr. DeAngelo's behalf during the Class Period in accordance with a plan adopted pursuant to SEC Rule 10b5-1, 17 C.F.R. § 240.10b5-1, and refer to HD Supply's SEC filings for information

5

about Mr. DeAngelo's transactions in HD Supply stock.

9.      Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of this paragraph purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

10.     Admit that while she was employed as Director, Supply Chain, Nazi Ali presented information to members of HD Supply FM's management team concerning the FM supply chain network. Deny the remaining allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of this paragraph purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

11.     Deny the allegations in this paragraph, except refer to HD Supply's June 6, 2017 press release, HD Supply's SEC Form 10-Q filed on June 6, 2017, and the transcript of the HD Supply public earnings conference call held on June 6, 2017 for their contents.

12.     Deny the allegations in this paragraph, except refer to the transcript of the June 6, 2017 HD Supply public earnings conference call for its contents.

13.     Deny the allegations in this paragraph, except refer to the cited third-party analyst reports for their contents.

14.     Deny the allegations in this paragraph, except refer to publicly available data regarding HD Supply's stock price history.

15.     Admit that this action seeks redress on behalf of certain HD Supply shareholders.  Deny the remaining allegations in this paragraph.

16.     The allegations in this paragraph state legal conclusions that Defendants are not required to admit or deny. To the extent that a response is required, Defendants deny the allegations in this paragraph.

17.     The allegations in this paragraph state legal conclusions that Defendants are not required to admit or deny. To the extent that a response is required, Defendants admit that the court has subject matter jurisdiction over this action but deny all remaining allegations in this paragraph.

18.     The allegations in the first sentence of this paragraph state legal conclusions that Defendants are not required to admit or deny. To the extent that a response is required, Defendants admit that venue is proper in this court but deny all remaining allegations in the first sentence of this paragraph. Admit that HD Supply's principal executive offices are located at 3400 Cumberland Boulevard, Atlanta, Georgia, 30339. Deny all remaining allegations in this paragraph.

19.    Deny the allegations in this paragraph.

20.    Admit that the Court appointed City Pension Fund for Firefighters & Police Officers in the City of Miami Beach as a Co-Lead Plaintiff in this case on October 19, 2017. Deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

21.    Admit that the Court appointed Pembroke Pines Pension Fund for Firefighters and Police Officers as a Co-Lead Plaintiff in this case on October 19, 2017. Deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

22.    Admit that the Court appointed Hollywood Police Officers' Retirement System as a Co-Lead Plaintiff in this case on October 19, 2017. Deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

23.    Admit that HD Supply is a Delaware corporation with its principal executive offices located at 3400 Cumberland Boulevard, Atlanta, Georgia 30339. Admit that HD Supply's common stock is traded on the NASDAQ Stock Market under the symbol "HDS."  Deny the remaining allegations in this paragraph.

24.    Admit the allegations in the first sentence of this paragraph. Admit that Mr. DeAngelo served as the CEO of the Company's FM business unit from

8

September 2015 through June 5, 2017, and that Mr. Stengel was appointed as the CEO of the FM business unit on June 5, 2017.  Admit that the last day of the Class Period alleged in the Complaint is June 6, 2017.  Deny all remaining allegations in this paragraph.

25.    Denied.

26.    Deny that Mr. Levitt served as "Comptroller" of HD Supply during the Class Period. Admit the remaining allegations in this paragraph.

27.    Denied.

28.    Admit the allegations in the first sentence of this paragraph. Deny the remaining allegations in this paragraph, except refer to HD Supply's Class Period SEC filings, press releases, and public earnings conference call transcripts for their contents.

29.    Admit the allegations in the first sentence of this paragraph. Admit that Messrs. Stengel and DeAngelo, among others, oversaw the 2016 HD Supply FM inventory-related recovery effort. Deny the remaining allegations in this paragraph.

30.    Admit the allegations in the second sentence of footnote one of this paragraph.  Deny all remaining allegations in this paragraph, except refer to HD Supply's Class Period SEC filings for discussion of the Company's reportable

business units.

31.    Admitted.

32.    Deny the allegations in this paragraph, except refer to HD Supply's Class Period SEC filings for discussion of the FM business units' results and contribution to HD Supply's adjusted EBITDA.

33.    Admit the allegations contained in footnote 2 of this paragraph.  Deny the remaining allegations in this paragraph, except refer to HD Supply's Class Period SEC filings, press releases, public earnings conference call transcripts, and the Company's website for their contents and discussion of the 2016 HD Supply FM inventory-related recovery effort.

34.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first three sentences and footnotes 3 and 4 of this paragraph purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals, and refer to HD Supply's Class Period SEC filings, press releases, and public earnings conference call transcripts for discussion of the 2016 HD Supply FM inventory-related recovery effort.

35.    Admit that the FM business unit moved its principal leadership and operations from San Diego to Atlanta in early 2016. Deny the remaining

allegations in this paragraph except deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

36.    Deny the allegations in this paragraph except deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

37.    Deny the allegations in this paragraph, except refer to HD Supply's Class Period SEC filings, press releases, and public earnings conference call transcripts for discussion of the 2016 HD Supply FM inventory-related recovery effort, and deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

38.    Deny the allegations in this paragraph, except refer to HD Supply's Class Period SEC filings, press releases, and public earnings conference call transcripts for discussion of the 2016 HD Supply FM inventory-related recovery effort, and deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly

made by unnamed and insufficiently identified individuals.

39.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

40.    Deny the allegations in this paragraph, except refer to HD Supply's Class Period SEC filings, press releases, and public earnings conference call transcripts for discussion of the 2016 HD Supply FM inventory-related recovery effort, and deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

41.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

42.    Admit that HD Supply FM regularly tracked various metrics, including metrics such as "fill rate" and "in-stock" rates in connection with the 2016 HD Supply FM inventory-related recovery effort. Deny the remaining allegations in this paragraph, except deny knowledge or information sufficient to

form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

43. Admit that HD Supply FM regularly tracked various metrics, including metrics such as "fill rate" and "in-stock" rates in connection with the 2016 HD Supply FM inventory-related recovery effort. Deny the remaining allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

44. Admit that during a portion of 2016 some HD Supply FM associates referred to some aspects of the 2016 HD Supply FM inventory-related recovery effort as "Project Firefight." Deny the remaining allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

45. Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and

insufficiently identified individuals.

46.     Admit that Messrs. DeAngelo, Stengel, and other HD Supply FM associates participated in phone calls concerning the 2016 HD Supply FM inventory-related recovery effort. Deny the remaining allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

47.     Admit that HD Supply FM regularly tracked various metrics, including metrics such as "fill rate" and "in-stock" rates in connection with the 2016 HD Supply FM inventory-related recovery effort. Deny knowledge or information sufficient to form a belief as to the truth of remaining allegations in the first sentence of this paragraph. Deny the remaining allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of the allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

48.     Admit that HD Supply publicly disclosed on a periodic basis information concerning the 2016 HD Supply FM inventory-related recovery effort. Deny the remaining allegations in this paragraph, except refer to the transcript of HD Supply's June 7, 2016 public earnings conference call for its contents.

49.    Deny the allegations in this paragraph, except refer to HD Supply's SEC Form 10-Q filed September 7, 2016, HD Supply's September 7, 2016 earnings press release, and the transcript of HD Supply's September 7, 2016 public earnings conference call for their contents.

50.    Denied.

51.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

52.    Deny the allegations in this paragraph, except refer to the transcript of the Baird Conference for its contents.

53.    Deny the allegations in this paragraph, except refer to the transcript of the Baird Conference for its contents.

54.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

55.    Admit that Messrs. DeAngelo, Stengel, Ali and other HD Supply FM associates participated in calls regarding HD Supply's FM supply chain. Deny the

remaining allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

56.    Deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.  Deny the remaining allegations in this paragraph, except refer to the transcript of HD Supply's public earnings conference call held on December 6, 2016 for its contents.

57.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

58.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals and refer to HD Supply's Class Period SEC filings, press releases, and transcripts of public earnings conference calls for discussion of the 2016 HD Supply FM inventory-related recovery effort.

59.     Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

60.     Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

61.     Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

62.     Admit that, in late 2016, HD Supply FM hired REGIS to assist HD Supply FM in conducting a physical inventory count at nine FM distribution centers.  Deny the remaining allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

63.     Deny the allegations in this paragraph, except deny knowledge or

information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

64.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

65.    Admit that while she was employed as Director, Supply Chain, Nazia Ali presented information to members of HD Supply FM's management team concerning the FM distribution network. Deny the remaining allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

66.    Admit that while she was employed as Director, Supply Chain, Nazia Ali presented information to members of HD Supply FM's management team concerning the FM distribution network. Deny the remaining allegations in this paragraph.

67.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to

18

describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

68.   Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

69.   Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

70.   Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

71.   Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

72.   Deny the allegations in this paragraph, except refer to HD Supply's

Class Period SEC filings, press releases, and transcripts of public earnings conference calls for their contents.

73.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

74.    Admit that Mr. Levitt participated in the Barclays Conference on February 22, 2017. Deny the remaining allegations in this paragraph, except refer to the transcript of the Barclays Conference for its contents.

75.    Deny the allegations in this paragraph, except refer to the transcript of the Barclays Conference for its contents.

76.    Deny the allegations in this paragraph, except refer to publicly available data regarding HD Supply's stock price history.

77.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

78.    Admit that, on March 14, 2017, HD Supply issued a press release announcing its fourth quarter results from the previous year and filed its annual

report on Form 10-K with the SEC. Admit that the Company's earnings for the fourth quarter of fiscal 2016 were consistent with analysts' consensus estimates. Deny the remaining allegations in this paragraph, except refer to HD Supply's March 14, 2017 press release and Form 10-K for their contents and to publicly available data regarding HD Supply's stock price history.

79.    Deny the allegations in this paragraph, except refer to the transcript of HD Supply's public earnings conference call held on March 14, 2017 for its contents.

80.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, except refer to the cited William Blair and Deutsche Bank Market Research reports for their contents.

81.    Denied.

82.    Deny the allegations in this paragraph, except admit that shares of HD Supply stock were sold on Mr. DeAngelo's behalf during the Class Period in accordance with a plan adopted pursuant to SEC Rule 10b5-1, 17 C.F.R. § 240.10b5-1, and refer to HD Supply's SEC filings for information about Mr. DeAngelo's transactions in HD Supply stock.

83.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to

describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

84.     Deny the allegations in this paragraph, except admit that shares of HD Supply stock were sold on Mr. DeAngelo's behalf during the Class Period in accordance with a plan adopted pursuant to SEC Rule 10b5-1, 17 C.F.R. §240.10b5-1, and refer to HD Supply's SEC filings for information about Mr. DeAngelo's transactions in HD Supply stock.

85.     Deny the allegations in this paragraph, except refer to HD Supply's SEC Form 10-Q and press release dated June 6, 2017 and the transcript of HD Supply's June 6, 2017 public earnings conference call for their contents.

86.     Deny the allegations in paragraph, except refer to the transcript of HD Supply's June 6, 2017 public earnings conference call for its contents.

87.     Deny the allegations in paragraph, except refer to the transcript of HD Supply's June 6, 2017 public earnings conference call for its contents.

88.     Deny the allegations in this paragraph, except refer to the cited Deutsche Bank Market Research report for its contents.

89.     Deny the allegations in this paragraph, except refer to the cited RBC Capital Markets report for its contents.

90.     Deny the allegations in this paragraph, except refer to publicly

available data regarding HD Supply's stock price history.

91.    Admit that Messrs. DeAngelo and Levitt participated in the Baird Conference on November 9, 2016. Deny the remaining allegations in this paragraph, except refer to the transcript of the Baird Conference for its contents.

92.    Deny the allegations in this paragraph, except refer to the transcript of the Baird Conference for its contents.

93.    Deny the allegations in this paragraph, except refer to the transcript of the Baird Conference for its contents.

94.    Deny the allegations in this paragraph, except refer to the cited Credit Suisse report for its contents.

95.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

96.    Admit that, on December 6, 2016, HD Supply issued a press release announcing its third quarter 2016 financial results, and that it held a public earnings conference call afterwards to discuss the results. Deny the remaining allegations in paragraph, except refer to the transcript of the public earnings conference call for its contents.

97.     Deny the allegations in this paragraph, except refer to the transcript of HD Supply's public earnings conference call held on December 6, 2016 for its contents.

98.     Deny the allegations in this paragraph, except refer to the transcript of HD Supply's public earnings conference call held on December 6, 2016 for its contents.

99.     Deny the allegations in this paragraph, except refer to the cited Wells Fargo report for its contents.

100.    Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

101.    Denied.

102.    Admit that Mr. Levitt spoke at the Barclays Conference on February 22, 2017. Deny the remaining allegations in this paragraph, except refer to the Barclays Conference transcript for its contents.

103.    Deny the allegations in this paragraph, except refer to the Barclays Conference transcript for its contents.

104.    Denied.

105.   Admit the allegations in the first sentence of this paragraph. Admit that HD Supply's earnings for the fourth quarter of fiscal 2016 were consistent with analysts' consensus estimates. Deny the remaining allegations in this paragraph, except refer to HD Supply's March 14, 2017 earnings press release for its contents.

106.   Admit that HD Supply held a public earnings conference call for the fourth quarter of fiscal 2016 on March 14, 2017, before the market opened. Deny the remaining allegations in this paragraph, except refer to the transcript of the public earnings conference call held on March 14, 2017 for its contents.

107.   Deny the allegations in this paragraph, except refer to publicly available data regarding HD Supply's stock price history.

108.   Deny the allegations in this paragraph, except refer to the transcript of HD Supply's public earnings conference call held on March 14, 2017 for its contents.

109.   Deny the allegations in this paragraph, except refer to the transcript of HD Supply's public earnings conference call held on March 14, 2017 for its contents.

110.   Deny the allegations in this paragraph, except refer to the cited William Blair report for its contents.

25

111.   Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals and refer to HD Supply's Form 10-Q and earnings press release dated June 6, 2017 and the transcript of HD Supply's public earnings conference call held on June 6, 2017 for their contents.

112.   Denied.

113.   Admit that Mr. DeAngelo served as the CEO of the Company's FM business unit from September 2015 through June 5, 2017, and that Mr. Stengel was appointed as the CEO of the FM business unit on June 5, 2017.   Deny the remaining allegations in this paragraph, except refer to the transcripts of HD Supply's public earnings conference calls held on September 7, 2016 and November 9, 2016 for their contents.

114.   Deny the allegations in this paragraph, except refer to the Baird Conference transcript for its contents.

115.   Deny the allegations in this paragraph, except refer to the transcript of HD Supply's public earnings conference call held on December 6, 2016 for its contents.

116.   Deny the allegations in this paragraph, except deny knowledge or

information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

117.   Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

118.   Admit that Mr. DeAngelo participated in certain calls regarding the 2016 HD Supply FM inventory-related recovery effort. Deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations, including allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

119.   Admit that Mr. DeAngelo participated in certain calls regarding the 2016 HD Supply FM inventory-related recovery effort. Deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations, including allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

120.   Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to

describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

121.   Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

122.   Deny the allegations in this paragraph, except refer to HD Supply's SEC filings for fiscal years 2016 through 2018 for discussion of the FM business's contribution to HD Supply's Adjusted EBITDA.

123.   Deny the allegations in this paragraph, except refer to HD Supply's SEC filings, press releases, and transcripts of public earnings conference calls and investor conferences for discussion of the 2016 HD Supply FM inventory-related recovery effort and HD Supply's financial results.

124.   Deny the allegations in this paragraph, except refer to HD Supply's SEC filings, press releases, and transcripts of public earnings conference calls and investor conferences for discussion of the 2016 HD Supply FM inventory-related recovery effort and HD Supply's financial results.

125.   Deny the allegations in this paragraph, except refer to the transcripts of HD Supply's Class Period public earnings conference calls for their contents.

126.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, except refer to the cited Deutsche Bank Market Research and RBC Capital Markets Reports for their contents.

127.   Deny the allegations in this paragraph, except refer to HD Supply's SEC filings, press releases, and transcripts of public earnings conference calls and investor conferences for their contents.

128.   Deny the allegations in this paragraph, except admit that shares of HD Supply stock were sold on Mr. DeAngelo's behalf in accordance with a plan adopted pursuant to SEC Rule 10b5-1, 17 C.F.R. § 240.10b5-1, and refer to HD Supply's SEC filings for information about Mr. DeAngelo's transactions in HD Supply stock.

129.   Deny the allegations in this paragraph, except deny knowledge or information sufficient to form a belief as to the truth of allegations purporting to describe statements and/or observations allegedly made by unnamed and insufficiently identified individuals.

130.   Denied.

131.   The allegations in this paragraph are not asserted against Defendants and appear to state legal conclusions that Defendants are not required to admit or deny. To the extent that a response is required, Defendants deny the allegations in

this paragraph.

132.   The allegations in the first and last sentences of this paragraph assert legal conclusions that Defendants are not required to admit or deny. To the extent that a response is required, Defendants deny those allegations. Admit that HD Supply's common stock was traded during the Class Period on the NASDAQ Stock Market under the symbol "HDS" and admit that HD Supply had 202,659,525 shares of common stock outstanding as of June 2, 2017.   Deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

133.   Denied.

134.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

135.   The allegations in this paragraph assert legal conclusions that Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in this paragraph.

136.   The allegations in this paragraph assert legal conclusions that Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in this paragraph.

137.   The allegations in the first sentence of this paragraph assert legal

conclusions that Defendants are not required to admit or deny. To the extent a response is required, Defendants deny those allegations. Deny the remaining allegations in this paragraph.

138.    Denied.

139.    Denied.

140.    Denied.

141.    Denied.

142.    Denied.

143.    Deny the allegations in this paragraph, except refer to publicly available data regarding HD Supply's stock price history and refer to HD Supply's SEC filings for information about Mr. DeAngelo's transactions in HD Supply stock.

144.    Deny the allegations in this paragraph, except refer to publicly available data regarding HD Supply's stock price history.

145.    Deny the allegations in this paragraph, except refer to publicly available data regarding HD Supply's stock price history.

146.    Denied.

147.    The allegations in the first sentence of this paragraph assert legal conclusions that Defendants are not required to admit or deny. To the extent a

response is required, Defendants deny those allegations. Admit that HD Supply common stock was traded on the NASDAQ Stock Market during the Class Period. Admit that, during the Class Period, HD Supply periodically filed public reports with the SEC and the NASDAQ Stock Market.  Admit that, during the Class Period, securities analysts published research reports concerning HD Supply. Admit that, during the Class Period, HD Supply issued press releases. Deny the remaining allegations in this paragraph, including all subparts thereof.

148.  Deny that purchasers of HD Supply common stock during the Class Period purchased shares of such common stock at artificially inflated prices and deny that such persons suffered injury.  The remaining allegations in this paragraph assert legal conclusions that Defendants are not required to admit or deny. To the extent a response is required, Defendants deny those allegations and deny any remaining allegations in this paragraph.

149. The allegations in this paragraph assert legal conclusions that Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in this paragraph.

150.  The allegations in the first sentence of this paragraph assert legal conclusions that Defendants are not required to admit or deny. To the extent a response is required, Defendants deny those allegations.  Deny the remaining

allegations in this paragraph.

151.   The allegations in this paragraph assert legal conclusions that Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in this paragraph.

152.   The allegations in this paragraph assert legal conclusions that Defendants are not required to admit or deny. To the extent a response is required, Defendants deny the allegations in this paragraph.

## COUNT I

153.   Defendants repeat and reincorporate their responses set forth above as if fully set forth herein.

154.   Admit that the Plaintiffs purport to bring Count I pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 against Defendants on behalf of the Class, but deny that Count I, or any claim in the Complaint, has merit, deny that the Class should be certified, deny that Plaintiffs are proper representatives of the Class and deny any remaining allegations in this paragraph.

155.   Denied.

156.   Denied.

157.   Denied.

158.   Denied.

159.   Denied.

160.   Deny the allegations in this paragraph, except admit that shares of HD Supply stock were sold on Mr. DeAngelo's behalf in accordance with a plan adopted pursuant to SEC Rule 10b5-1, 17 C.F.R. § 240.10b5-1, and refer to HD Supply's SEC filings for information about Mr. DeAngelo's transactions in HD Supply stock.

161.   Denied.

162.   Denied.

163.   Denied.

164.   Denied.

## **COUNT II**

165.   Defendants repeat and reincorporate their responses set forth above as if fully set forth herein.

166.   Admit that the Plaintiffs purport to bring Count II pursuant to Section 20(a) of the Exchange Act against Defendants on behalf of the Class, but deny that Count II, or any claim in the Complaint, has merit, deny that the Class should be certified, deny that Plaintiffs are proper representatives of the Class and deny any remaining allegations in this paragraph.

167.   Denied.

168. Deny the allegations in this paragraph, except refer to HD Supply's Class Period SEC filings, press releases, and transcripts of public earnings conference calls and investor conferences for discussion of Mr. DeAngelo's oversight of matters relating to the FM supply chain.

169. Denied.

170. Denied.

## PRAYER FOR RELIEF

Deny that the Plaintiffs are entitled to any of the relief requested in the Prayer for Relief and deny any remaining allegations in these and any other portions of the Complaint to the extent not expressly admitted herein.

## JURY DEMAND

Defendants join Plaintiffs' demand for a trial by jury.

## DEFENSES

Without assuming the burden of proof or persuasion where it otherwise rests with the Plaintiffs, Defendants plead the following defenses:

### First Defense

Without admitting that Plaintiffs suffered damages, or that Defendants are liable for any such damages, Defendants assert that any liability is limited by 15 U.S.C. § 78u-4(e) & (f) and under principles of equitable allocation,

recoupment, set-off, proportionate liability, comparative fault, and failure to mitigate.

## Second Defense

Plaintiffs' claim under Section 20(a) of the Exchange Act fails because the Individual Defendants acted with good faith and did not directly or indirectly induce any act or acts constituting a direct or primary violation of the Securities Exchange Act of 1934 or the rules or regulations thereunder.

## Third Defense

Every act or omission alleged in the Complaint was done or omitted in good faith conformity with the rules and regulations of the Securities and Exchange Commission, and therefore, pursuant to Section 23(a) of the Securities Exchange Act of 1934, there is no liability for any act or omission so alleged.

## Fourth Defense

Neither Plaintiffs nor any purported class member can establish the prerequisites for certifying a class or maintaining this action as a class action.

## Fifth Defense

Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs assumed the risks of which they complain in this action.

### Sixth Defense

Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs ratified, consented to, and/or acquiesced in the wrongful acts and omissions alleged in the Complaint.

### Seventh Defense

Plaintiffs' claims are barred, in whole or in part to the extent applicable, by waiver, release, and discharge.

### Eighth Defense

Plaintiffs' claims are barred to the extent they are untimely under the applicable statute of limitations and/or doctrine of laches.

### Ninth Defense

Defendants are not liable for alleged misstatements and omissions protected by the safe harbor provision of Section 10(b) of the Exchange Act and the rules promulgated thereunder and/or the "bespeaks caution" doctrine.

### Tenth Defense

Defendants are not liable under the "truth-on-the-market" doctrine because the truth concerning any alleged misstatement or omission of material fact by Defendants was at all relevant times publicly available to the market through credible sources.

## **Reservation of Rights to Assert Additional Defenses**

Defendants reserve the right to raise any additional defenses, cross-claims, and third-party claims not asserted herein of which they may become aware through discovery or other investigation, as may be appropriate at a later time.

WHEREFORE, Defendants having fully answered Plaintiffs' Complaint, pray:

a) that the Complaint be dismissed with prejudice;

b) that judgment be entered in Defendants' favor;

c) that all costs of this action be taxed against Plaintiffs; and

d) for such other and further relief as the Court deems proper.

Respectfully submitted, this 5th day of November, 2018.

*s/ M. Robert Thornton*
M. Robert Thornton
Georgia Bar No. 710475
Benjamin Lee
Georgia Bar No. 443082
James Matthew Brigman
Georgia Bar No. 254905
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, Georgia  30309-3521
Tel: (404) 572-4600
Fax: (404) 572-5100
bthornton@kslaw.com
blee@kslaw.com
mbrigman@kslaw.com

38

*Counsel for Defendants HD Supply Holdings, Inc., Joseph J. DeAngelo, and Evan J. Levitt*

## **<u>LOCAL RULE 7.1(D) CERTIFICATION</u>**

The undersigned counsel hereby certifies that the text of this submission has been prepared in Times New Roman typeface, 14 point, consistent with this Court's requirements in Local Rule 5.1(C).

*<u>s/ M. Robert Thornton</u>*
M. Robert Thornton
Georgia Bar No. 710475

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of November, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to counsel of record.


_s/ M. Robert Thornton_____
M. Robert Thornton
Georgia Bar No. 710475