# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| IN RE HD SUPPLY HOLDINGS, INC. SECURITIES LITIGATION | CONSOLIDATED CASE NO. 1:17-CV-02587-ELR |

# MEMORANDUM OF LAW IN SUPPORT OF
# LEAD PLAINTIFFS' UNOPPOSED MOTION FOR:
# (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
# (II) CERTIFICATION OF THE SETTLEMENT CLASS;
# AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY OF THE ACTION...............4

III.  THE TERMS OF THE SETTLEMENT ........................................6

IV.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...........7

    A.   Lead Plaintiffs and Lead Counsel Are Adequate
        Representatives.......................................................................9

    B.   The Settlement is the Product of Arm's-Length Negotiations............10

    C.   The Relief Provided to the Settlement Class Is Adequate .................11

        1.   The Costs, Risks, and Delay of Trial and Appeal....................11

        2.   Other Factors Established by Rule 23(e)(2)(C) Support
             Preliminary Approval...................................................14

    D.   All Settlement Class Members Are Treated Equitably.....................16

    E.   The Remaining Eleventh Circuit Factors are Satisfied.....................16

        1.   The Settlement Amount is Reasonable Considering the
             Range of Possible Recoveries...........................................16

        2.   The Stage of Proceedings at Which Settlement was
             Achieved Strongly Supports Preliminary Approval.................18

        3.   Recommendation of Experienced Counsel Favors
             Preliminary Approval of the Settlement ...............................18

V.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED .........................19

    A.   Numerosity – Rule 23(a)(1) .................................................20

    B.   Commonality – Rule 23(a)(2) ...............................................20

    C.   Typicality – Rule 23(a)(3).....................................................21

    D.   Adequacy – Rule 23(a)(1) .....................................................22

E.      Predominance and Superiority – Rule 23(b)(3) ..................................22

VI.    THE PROPOSED NOTICE SHOULD BE APPROVED............................23

VII.   PROPOSED SETTLEMENT SCHEDULE...................................................25

VIII.  CONCLUSION............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altman v. White House Black Market, Inc.,*
  2017 WL 8780202 (N.D. Ga. Oct. 25, 2017)......................................................21

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) .........................................................................................20

*Bennett v. Behring Corp.,*
  737 F.2d 982 (11th Cir. 1984).............................................................................8, 9

*Busby v. JRHBW Realty, Inc.,*
  513 F.3d 1314 (11th Cir. 2008) ........................................................................9, 22

*Carpenters Health & Welfare Fund v. Coca-Cola Co.,*
  2008 WL 11336122 (N.D. Ga. Oct. 20, 2008)...................................................17

*Cheney v. Cyberguard Corp.,*
  213 F.R.D. 484 (S.D. Fla. 2003) .......................................................................20

*Cook v. Palmer, Reifler & Assocs.,*
  2019 WL 3383634 (M.D. Fla. May 17, 2019) .....................................................8

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977)............................................................................19

*Cty. of Monmouth, New Jersey v. Fla. Cancer Specialists, P.L.,*
  2019 WL 1487340 (M.D. Fla. Apr. 4, 2019) ......................................................9

*Deas v. Russell Stover Candies, Inc.,*
  2005 WL 8158201 (N.D. Ala. Dec. 22, 2005)...................................................17

*Garst v. Franklin Life Ins. Co.,*
  1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 28, 1999) .................................18

*George v. Academy Mortgage Corporation (UT)*,
369 F.Supp.3d 1356 (N.D. Ga. March 20, 2019) .................................................7

*Gunthert v. Bankers Standard Ins. Co.*,
2019 WL 1103408 (M.D. Ga. Mar. 8, 2019) ....................................................10

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ...................................................14

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ....................................................7

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...........................................................11

*In re Checking Account Overdraft Litig.*,
2012 WL 4173458 (S.D. Fla. Sept. 19, 2012) ....................................................3

*In re Checking Account Overdraft Litig*,
275 F.R.D. 654 (S.D. Fla. 2011) ....................................................................10

*In re China Med. Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014)...................................................10

*In re Healthsouth Corp. Sec. Litig.*,
334 F. App'x 248 (11th Cir. 2009)..................................................................16

*In re Internap Network Services Corp. Sec. Litig.*,
2012 WL 12878579 (N.D. Ga. Aug. 23, 2012)..................................................23

*In re NetBank, Inc. Sec. Litig.*,
259 F.R.D. 656 (N.D. Ga. 2009) ....................................................................23

*In re Rayonier Inc. Sec. Litig.*,
2017 WL 4542852 (M.D. Fla. Oct. 5, 2017).....................................................16

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
571 F. Supp. 2d 1315 (N.D. Ga. 2007) ............................................................21

iv

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (S.D. Fla. 2001) .......................................................... 17, 18

*In re Synovus Financial Corp.*,
   2013 WL 12126755 (N.D. Ga. March 7, 2013) .......................................... 20, 21

*In re Theragenics Corp. Sec. Litig.*,
   205 F.R.D. 687 (N.D. Ga. 2002) ............................................................................23

*In re: Equifax Inc. Customer Data Sec. Breach Litig.,*
   2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ........................................................15

*Kornberg v. Carnival Cruise Lines, Inc.,*
   741 F.2d 1332 (11th Cir. 1984) ..............................................................................21

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..................................................................19

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..............................................................................14

*Sanchez v. Launch Tech. Workforce Sols., LLC,*
   2019 WL 2098353 (N.D. Ga. May 14, 2019) ................................................. 24, 25

*Schorr v. Countrywide Home Loans, Inc.*,
   2015 WL 13402606 (M.D. Ga. Apr. 1, 2015) .......................................................20

*Strube v. Am. Equity Inv. Life Ins. Co.*,
   226 F.R.D. 688 (M.D. Fla. 2005) ..................................................................... 11, 19

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) .....................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................21

*Williams v. Mohawk Indus., Inc.*,
   568 F.3d 1350 (11th Cir. 2009) ..............................................................................22

*Zamber v. Am. Airlines, Inc.*,
  2019 WL 2262914, n. 3 (S.D. Fla. May 28, 2019) ...............................................7

**STATUTES**

15 U.S.C. §78u-4(a)(7) .............................................................................................24

**RULES**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Lead Plaintiffs, by and through their undersigned counsel of record, respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice to the Settlement Class.

## I.   INTRODUCTION[1]

After more than two years of vigorously contested litigation, the Parties have agreed to a Settlement in this securities class action that provides for the payment of $50 million to resolve all claims against Defendants.  This is an excellent recovery for the Settlement Class, as it represents the second largest securities class action settlement in this District in the last twenty years, and will result in Class members recovering a substantial percentage of their likely maximum recoverable damages.  Lead Plaintiffs now seek the Court's preliminary approval of the Settlement—the first in a two-step process governing the Court's approval of this securities class action settlement.  As discussed below, the Settlement easily satisfies each of the factors relevant on a motion for preliminary approval.

The Settlement—which represents a substantial recovery that falls well within the range of possible approval—involved an extensive litigation effort, including, among other things: (i) a thorough investigation, which included

---

[1] Unless otherwise indicated herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated January 30, 2020 (the "Stipulation") filed herewith as Exhibit 2; all citations to "¶" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Stipulation; all citations and internal quotation marks are omitted; and all emphasis is added.

locating and interviewing numerous confidential witnesses who provided Lead Plaintiffs with information that was critical in pleading their claims; (ii) the filing of a detailed amended complaint; (iii) consultation with various experts; (iv) successfully opposing Defendants' motion to dismiss; (v) engaging in extensive class certification discovery and fully briefing class certification; (vi) opposing Defendants' motion to exclude Plaintiffs' market efficiency expert; (vii) engaging in comprehensive fact discovery, including obtaining, reviewing, and analyzing approximately 265,000 pages of documents produced by Defendants and relevant third parties; (viii) defending the depositions of each Lead Plaintiff, Plaintiffs' investment manager, and Plaintiffs' expert on market efficiency, as well as deposing Defendants' rebuttal expert on market efficiency and loss causation; (ix) the submission of detailed mediation statements setting forth Lead Plaintiffs' positions on the hotly disputed issues in the case; and (x) two formal day-long mediation sessions before a renowned mediator involving rigorous and extensive negotiations.

Lead Plaintiffs and Lead Counsel have thus vigorously prosecuted the Action from its inception and approve the Settlement.  Based upon their experience, their evaluation of the facts and the applicable law, their recognition of the substantial amount of the Settlement, and the considerable risk and expense of protracted litigation against Defendants, Lead Plaintiffs and Lead Counsel

respectfully submit that the proposed Settlement is fair, reasonable and adequate, and is in the best interests of the Settlement Class.  This is especially so in light of the significant risk that the Class might recover substantially less (or nothing) if the Action were litigated through dispositive motions, trial, and the inevitable appeals. This risk was particularly acute in light of the credible arguments that Defendants advanced on the issues of falsity, scienter, loss causation and damages, among other issues, any one of which could have eliminated any recovery for the Class.

At this preliminary approval stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Settlement Class should be notified of the proposed Settlement. *In re Checking Account Overdraft Litig.*, 2012 WL 4173458, at *5 (S.D. Fla. Sept. 19, 2012) (preliminary approval "is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."). Accordingly, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order submitted herewith, which will, among other things:

(i)     preliminarily approve the Settlement pursuant to the Stipulation;

(ii)    certify the Settlement Class;

(iii)   approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order;

(iv)  find that the proposed procedures for distribution of the Notice and publication of the Summary Notice constitute the best notice practicable under the circumstances, and comply with due process, Fed. R. Civ. Pro. 23, and the PSLRA; and

(v)   set a schedule and procedures for: (1) disseminating the Notice and publishing the Summary Notice; (2) requesting exclusion from the Settlement Class; (3) objecting to the Settlement, the Plan of Allocation, Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses, or Lead Plaintiffs' representative reimbursement; (4) submitting papers in support of final approval of the Settlement; and (5) the Settlement Hearing.

## II.  FACTUAL AND PROCEDURAL HISTORY OF THE ACTION

On July 10, 2017, Plaintiff Hollywood Police Officers' Retirement System filed the initial complaint in the Action.  Dkt. No. 1.  On October 19, 2017, the Court entered an Order appointing the Plaintiffs as Lead Plaintiffs, Saxena White P.A. as Lead Counsel, and Lindsey & Lacy, PC as local counsel.  Dkt. 34.

On November 16, 2017, Plaintiffs filed their Consolidated Amended Class Action Complaint (Dkt. 37) (the "Complaint").  Among other things, the Complaint alleges that Defendants violated the securities laws by making materially false and misleading statements regarding the Company's supply chain recovery efforts, which artificially inflated HD Supply's stock price during the Class Period.  On December 21, 2017, Defendants moved to dismiss the Complaint for failure to state a claim.  Dkt. 43.  Lead Plaintiffs opposed Defendants' motion to dismiss on February 1, 2018 (Dkt. 48), and Defendants filed their reply on

February 22, 2018.  Dkt. 50.  On September 19, 2018, the Court issued an Order granting in part and denying in part Defendants' motion to dismiss.  Dkt. 53.

From December 2018 through October 2019, counsel for Plaintiffs and Defendants engaged in extensive fact discovery.  Among other things, Plaintiffs served three separate sets of document requests on Defendants, and subpoenaed documents from six non-parties (including certain of the Company's supply chain consultants and logistics providers, and Defendant DeAngelo's stock brokerage and investment manager).  Plaintiffs ultimately obtained and reviewed over 265,000 pages of documents and also produced thousands of pages of documents to Defendants during the course of discovery.

On March 1, 2019, Plaintiffs filed their motion for class certification, together with the expert report of Dr. Michael Hartzmark who opined on market efficiency.  Dkt. 72.  On June 17, 2019, after deposing Plaintiffs' market efficiency expert as well as all three Lead Plaintiffs and their investment manager, Defendants filed their opposition (Dkt. 78), together with the expert report of Dr. David I. Tabak.  On June 21, 2019, Defendants separately filed a motion to exclude a portion of the opinion of Dr. Hartzmark.   Dkt. 79.  On July 11, 2019, Lead Plaintiffs deposed Dr. Tabak, and on August 2, 2019, Plaintiffs filed their class certification reply and opposition to Defendants' motion to exclude.  Dkt. 85.

While Plaintiffs were actively pursuing fact discovery, the Parties agreed to participate in a private mediation.  The Parties selected Jed. D. Melnick, Esq., of JAMS to serve as mediator, an accomplished and widely-respected neutral of JAMS.  In advance of the mediation, the Parties submitted detailed mediation statements that addressed, among other things, issues related to liability, loss causation, and damages.  The Parties and Defendants' directors' and officers' liability insurance carriers participated in a full-day, in-person mediation session at the JAMS Office in New York, N.Y. on September 10, 2019.  The session ended without an agreement to settle.  Following that mediation, however, the Parties agreed to a second mediation session, which took place on October 22, 2019.  Once again, in advance of the mediation, the Parties submitted extensive papers addressing the strengths and weaknesses of the case.

Following the second mediation, Mr. Melnick submitted to the Parties a mediator's proposal to settle the Action for a cash payment of $50,000,000, which the Parties accepted on November 1, 2019.  The Parties then negotiated the full settlement terms set forth in the Stipulation.

## III.  THE TERMS OF THE SETTLEMENT

The proposed Settlement, which would resolve the Action in its entirety, provides that Defendants will pay or cause to be paid $50,000,000 in cash into an

escrow account for the benefit of the Settlement Class. The full terms and conditions of the Settlement are set forth in the Stipulation.

In addition, the Parties have entered into a confidential Supplemental Agreement under which Defendants may terminate the Settlement if requests for exclusion from the Settlement Class reach a certain threshold. This agreement, called a "blow provision," is a standard feature of securities class settlements and is generally maintained as confidential in order to prevent objectors from threatening to trigger the blow provision and leveraging that threat to obtain self-interested payments at the expense of the Class. *Zamber v. Am. Airlines, Inc.*, 2019 WL 2262914, at *6, n. 3 (S.D. Fla. May 28, 2019) ("Typically, a blow provision allows the defendant to terminate the settlement if a certain portion of the settlement class excludes themselves from the settlement class."); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (blow provisions "are not uncommon as they are designed to ensure than an objector cannot try to hijack a settlement in his or her own self-interest").[2]

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As a matter of public policy, settlements are a highly favored means of resolving litigation—particularly in complex class actions. *George v. Academy Mortgage Corporation (UT)*, 369 F.Supp.3d 1356, 1367 (N.D. Ga. March 20,

---

[2] If the Court would like to review the Supplemental Agreement, Plaintiffs request leave for the Parties to submit it under seal for *in camera* review.

2019).  In evaluating settlements, courts are guided by the "strong judicial policy favoring settlement" and the "realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Fed. R. Civ. P. 23(e) provides for court approval for any settlement of a class action, which is a two-step process.  First, the Court performs a preliminary review to determine whether notice of the proposed settlement should be sent to the class; second, after notice has been provided and a hearing has been held, the Court determines whether to approve the settlement as "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Preliminary approval should be granted upon a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  *Id.*  *See also Cook v. Palmer, Reifler & Assocs.*, 2019 WL 3383634 at *3 (M.D. Fla. May 17, 2019) (preliminary approval appropriate where "the court will likely be able to [] approve the propos[ed settlement] as fair, reasonable, and adequate.").

As amended effective December 1, 2018, Rule 23(e)(2) lists the following factors relevant in approving a settlement as fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account; (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including time of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

However, "the amendment does not displace considerations [previously] announced by the Eleventh Circuit." *Cty. of Monmouth, New Jersey v. Fla. Cancer Specialists, P.L.*, 2019 WL 1487340, at *2 (M.D. Fla. Apr. 4, 2019).   As such, the Eleventh Circuit's traditional settlement approval factors also still apply: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Id.* (quoting *Bennett,* 737 F.2d at 986).  As set forth below, the Settlement satisfies all of these criteria.

### A.    Lead Plaintiffs and Lead Counsel Are Adequate Representatives

Plaintiffs and Lead Counsel have adequately represented the Settlement Class, as required by Rule 23(e)(2)(A), during both the litigation of this Action and its settlement.  Plaintiffs' claims are typical of the claims of the Settlement Class, and they have no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest-possible recovery in this Action is firmly aligned with all Settlement Class Members. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008).

Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing

9

investors in such cases.  *See* ECF No. 24-7 (Saxena White firm resume).  Lead

Counsel vigorously prosecuted the Settlement Class's claims and expended

significant time and effort throughout the litigation.  *See* Secs. II, *supra* and

III.E.2., *infra*.  Plaintiffs and Lead Counsel are adequate representatives.

## B.    The Settlement is the Product of Arm's-Length Negotiations

Settling parties are entitled to a presumption that a proposed settlement is

fair and reasonable where the settlement is "the product of hard-fought, arm's

length negotiations by capable and experienced counsel."  *Gunthert v. Bankers*

*Standard Ins. Co.*, 2019 WL 1103408, at *3 (M.D. Ga. Mar. 8, 2019).  This

presumption applies even more so where a settlement "was reached with the

assistance of a well-qualified and experienced mediator." *In re Checking Account*

*Overdraft Litig*, 275 F.R.D. 654, 661-662 (S.D. Fla. 2011).

Here, the Parties and Defendants' directors' and officers' liability insurance

carriers engaged in two full-day mediation sessions before a highly experienced

and qualified mediator, Jed Melnick of JAMS.  Mr. Melnick is an acclaimed,

widely-respected JAMS mediator who has mediated hundreds of complex disputes

with aggregate values in the billions of dollars.  He is also the Managing Mediator

for the Weinstein Melnick Team, which includes the Hon. Daniel Weinstein (Ret.),

one of the nation's preeminent mediators of complex civil disputes.  *See In re*

*China Med. Corp. Sec. Litig.,* 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014)

("[T]his settlement is the result of a mediation held before Jed Melnick, Esq., a JAMS mediator.  Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive").  In connection with these sessions, the Parties exchanged multiple detailed written submissions that addressed, among other things, issues related to liability, loss causation, and damages.  Following the second mediation, Mr. Melnick submitted for the Parties' approval a mediator's proposal to settle and release all claims asserted against the Defendants in the Action in return for a cash payment of $50,000,000, which the Parties accepted.

Thus, the proposed Settlement was achieved only after extensive arm's-length negotiations oversee by a well-respected third-party neutral.

### C.    The Relief Provided to the Settlement Class Is Adequate

#### 1.    The Costs, Risks, and Delay of Trial and Appeal

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement."[3]  Here, there is no question that continued litigation would have been costly, risky, and protracted.  Indeed, even though Plaintiffs prevailed in part at the pleading stage, the Court's decision regarding Plaintiffs' motion for

---

[3] *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011) (court need not determine if the settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial.").

class certification was pending at the time the Settlement was reached. Although Plaintiffs believe the motion was meritorious, Defendants raised plausible arguments contesting class certification, and thus class certification was not a foregone conclusion. Had Plaintiffs failed to obtain class certification, the benefit to the Settlement Class would have been eliminated. Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case.

Furthermore, even if Plaintiffs had prevailed at the class certification stage, they would still have to prove their claims. Defendants deny that their public statements contained any material misstatements or omissions, and deny allegations of fault, liability, wrongdoing, and damages. Defendants would have continued to argue that their public statements were not false or misleading because such statements accurately reflected the then-current state of the Company's operations. Dkt. No. 43-1 at 16-19. Defendants further argued that based on these circumstances, Plaintiffs could not have established the required mental state of Defendants and therefore could not have proven scienter.

Additionally, Defendants would have vigorously disputed loss causation, arguing that the June 6, 2017 disclosure—which accounted for virtually all of Plaintiffs' damages—concerning HD Supply's new "accelerated investment" spending could not be linked to any past statements about the recovery of the Company's supply chain. Indeed, Defendants <u>never</u> expressly stated or recognized

12

that the new spending was needed to fix <u>any</u> prior supply chain problems, and Defendants have since argued exactly the opposite in their class certification briefing.  *See* Dkt. No. 78 (Defs. Class Cert. Opposition) at 23; Dkt. No. 78 Ex. O (Tabak Rpt.).  Moreover, Defendants argued that the vast majority of the additional spending announced that day was not at all related to the supply chain, but to other infrastructure projects such as the Company's website.  While Plaintiffs had arguments to respond to these contentions, Plaintiffs recognize that Defendants' loss causation arguments posed significant risks at class certification, summary judgment, and trial that could have undermined the viability of the entire Action.

In addition, even if Plaintiffs could prove that *some* of the June 6, 2017 stock price drop could be linked to a prior misrepresentation, proving that the *entirety* of that price decline was tied to Plaintiffs' allegations would have been extraordinarily difficult.  This is especially so considering the confounding information released that day, including the sale of HD Supply's Waterworks unit and investor fears that HD Supply's newly announced investment spending was a response to rising competition.  Indeed, analysts cited numerous other causes for the stock price decline following the June 6, 2017 disclosure that were unrelated to the alleged fraud, including Waterworks and rising competition fears.  *See* Dkt. No. 78, Ex. O.  While Plaintiffs believe they advanced credible counterarguments on these points, the fact remains that the Court at summary judgment or the jury at

trial could have lent such arguments substantial weight, thereby significantly reducing or eliminating recoverable damages.  Thus, even in a successful outcome at trial, Plaintiffs believe that the maximum recoverable damages that could be realistically established ranged from $99 million to $364 million.  Accordingly, the recovery here—which ranges from approximately 14% to 50.4% of the realistic maximum recoverable damages—is an outstanding result, and far exceeds the average recovery of 2.6% in comparable securities class actions.[4]

In sum, even after a successful trial, there was no guarantee that Plaintiffs would have obtained a judgment greater than the $50 million Settlement, as there was a very significant risk that continued litigation might yield a smaller recovery—or indeed, no recovery at all—several years in the future.[5]

## 2. Other Factors Established by Rule 23(e)(2)(C) Support Preliminary Approval

Under Rule 23(e)(2)(C), courts consider whether the settlement relief is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any

---

[4] *See* Boettrich and Starykh, Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review (NERA Jan. 29, 2019) at p. 35, Fig. 27, *available at* https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf. (noting 2.6% median recovery in cases where the maximum losses were between $200 million and $399 million).

[5] *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors supports the approval of the Settlement.

**First**, Plaintiffs propose well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Specifically, Epiq, the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. ¶¶ 18-30.  This method of claims processing is standard in securities class settlements and has long been found to be effective.

**Second**, as disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 30% to compensate them for the services they rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 30% of the Settlement Fund is reasonable in light of the work performed and the results obtained, and is comparable to other settlements approved in the Eleventh Circuit and nationwide.  *See*, *e.g.*, *In re: Equifax Inc. Customer Data Sec. Breach Litig.,* 2020 WL 256132, at *34 (N.D. Ga. Jan. 13, 2020) (Thrash, J.), ("[a]wards of up to 33% of the common fund are not uncommon in the Eleventh Circuit" in complex class actions, and noting that, in

Eleventh Circuit, average fee was 30% and median fee was 33% between 2009 and 2013); *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *1 (M.D. Fla. Oct. 5, 2017) (awarding 30% of $73 million settlement obtained while class certification motion was pending).

*Third*, with respect to Rule 23(e)(2)(C)(iv), as explained further, *supra*, the Parties have entered into a confidential agreement which establishes certain conditions under which HD Supply may terminate the Settlement if a certain number of potential Settlement Class Members request exclusion (or "opt-out") of the Settlement. ¶ 36.  This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.  *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009).

### D.    All Settlement Class Members Are Treated Equitably

As set forth in the Stipulation at ¶¶ 18-30, under the proposed Plan of Allocation—which was developed in consultation with Lead Plaintiffs' damages expert and treats all Settlement Class Members equitably—the Authorized Claimants shall receive their pro rata share of the Net Settlement Fund based upon their recognized claim compared to the total recognized claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached here to as Exhibit 1 to Exhibit A).

### E.    The Remaining Eleventh Circuit Factors are Satisfied

#### 1.    The Settlement Amount is Reasonable Considering the

## Range of Possible Recoveries

"The second and third factors in the Eleventh's Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Deas v. Russell Stover Candies, Inc.,* 2005 WL 8158201, at *11 (N.D. Ala. Dec. 22, 2005); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) (these factors "are easily combined").

As set forth above, the $50,000,000 cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class. Realistic maximum damages in the case ranged from $99 million to $364 million, and Defendants raised a number of credible arguments concerning falsity, scienter, loss causation and damages throughout the litigation that—if accepted—would have substantially reduced or eliminated altogether recoverable damages, further underscoring the valuable benefits obtained through the proposed Settlement. *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008) ("the determination of loss causation and damages is a complicated and uncertain process" with "highly unpredictable" results at trial). In light of these significant litigation risks, particularly concerning loss causation and damages, the Proposed Settlement is well within the range of reasonableness.

## 2.   The Stage of Proceedings at Which Settlement was Achieved Strongly Supports Preliminary Approval

In assessing the stage of the proceedings at which a settlement is achieved, the "relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." *Garst v. Franklin Life Ins. Co.,* 1999 U.S. Dist. LEXIS 22666, at *69-70 (N.D. Ala. June 28, 1999). Here, the Settlement was reached after over two years of hard-fought litigation, and after Plaintiffs conducted an extensive investigation and substantial fact and expert discovery, including a review and analysis of over 265,000 pages of documents. ¶ H. Plaintiffs also successfully opposed Defendants' motion to dismiss, filed a motion for class certification and a detailed expert report on market efficiency, deposed Defendants' class certification expert, opposed Defendants' motion to exclude Plaintiffs' expert, and participated in extensive settlement negotiations. ¶¶ A-I. In sum, by the time the Settlement was reached, Plaintiffs had sufficient information to assess the strengths and weaknesses of their claims, and were "well aware of the other side's position and the merits thereof." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1332.

## 3.   Recommendation of Experienced Counsel Favors Preliminary Approval of the Settlement

In determining whether the proposed Settlement is fair, reasonable, and adequate, the Court may rely on the judgment of counsel and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559

18

F.2d 1326, 1330 (5th Cir. 1977); *accord Perez v. Asurion Corp.*, 501 F. Supp. 2d

1360, 1380 (S.D. Fla. 2007); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. at

703.  Here, Lead Counsel are highly experienced in litigation of this type, are well

informed about the strengths and weaknesses of this case following years of

litigation, and strongly endorse the Settlement.

## V.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In granting preliminary settlement approval, the Court is also respectfully

requested to certify the proposed Settlement Class for purposes of the Settlement

under Fed. R. Civ. Pro. 23(a)(1)-(4), 23(b) and 23(e).  Paragraph 1(tt) of the

Stipulation sets forth the following Settlement Class definition:

> all persons and entities who or which purchased or otherwise acquired
> HD Supply common stock during the period from November 9, 2016
> through June 5, 2017, inclusive, and who were damaged thereby.[6]

A settlement class, like other certified classes, must generally satisfy the

requirements of Rules 23(a) and (b), however the Court "need not inquire whether

the case, if tried, would present intractable management problems, for the proposal

is that there be no trial."  *Schorr v. Countrywide Home Loans, Inc.*, 2015 WL

---

[6] Excluded from the Settlement Class are (1) Defendants; (2) members of the
Immediate Family of each Individual Defendant; (3) any person who was an
Officer or director of HD Supply during the Settlement Class Period; (4) any firm
or entity in which any Defendant has or had a controlling interest during the
Settlement Class Period; (5) any person who participated in the wrongdoing
alleged; (6) any affiliates, parents, or subsidiaries of HD Supply during the
Settlement Class Period; and (7) the legal representatives, agents, affiliates, heirs,
beneficiaries, successors-in-interest, or assigns of any excluded person or entity, in
their respective capacity as such.  Also excluded from the Settlement Class are any
persons or entities who or which exclude themselves by submitting a request for
exclusion that is accepted by the Court.

13402606, at *3 (M.D. Ga. Apr. 1, 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Certification is appropriate under Fed. R. Civ. P. 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

### A.   Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires the class to be "so numerous that joinder of all class members is impracticable."  Throughout the Settlement Class Period, HD Supply's common stock was actively traded on the NASDAQ, had approximately 202,659,525 million shares issued and outstanding, and had an average weekly trading volume of approximately 11.6 million shares. Thus, numerosity is satisfied. *See In re Synovus Financial Corp.*, 2013 WL 12126755, at *4 (N.D. Ga. March 7, 2013) ("[i]n federal securities fraud cases, [n]umerosity is generally presumed when a claim involves nationally traded securities").

### B.   Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "The threshold for commonality is not high." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003).  Indeed, "for purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Altman v. White House Black Market, Inc.,* 2017 WL 8780202, at *5 (N.D. Ga. Oct. 25, 2017).

Here, Plaintiffs allege that Defendants' fraudulent scheme involved numerous common questions of law and fact, including, among others: (1) whether Defendants violated the federal securities laws; (2) whether Defendants misrepresented or omitted material facts; (3) whether Defendants acted with scienter; (4) whether the Individual Defendants controlled HD Supply; (5) whether Settlement Class members suffered a compensable loss; and (6) whether Settlement Class members have sustained damages, and the proper measure of damages.  In other words, "Plaintiffs allege that Defendants made a series of false or misleading statements which were meant to artificially inflate or maintain the price of [HD Supply] stock which harmed stockholders."  *Synovus*, 2013 WL 12126755, at *5 (finding commonality).  Accordingly, Plaintiffs have demonstrated commonality.

### C.    Typicality – Rule 23(a)(3)

The test for typicality is "not demanding," *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1326-27 (N.D. Ga. 2007), and is satisfied where "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984).  The typicality

requirement "may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009). Plaintiffs' claims here are typical of the claims of the Settlement Class because they all allege that they purchased HD Supply's common stock at artificially inflated prices due to Defendants' material misstatements and omissions, and are subject to the same proof as the rest of the Settlement Class. Further, Plaintiffs are not subject to any unique defenses that would make them atypical Settlement Class Members. Typicality is satisfied.

### D.     Adequacy – Rule 23(a)(1)

The adequacy factor requires a finding that the representative parties will fairly and adequately protect the interests of the class. *Busby*, 513 F.3d at 1323. As set forth in Sec. III.A, *supra*, Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

### E.     Predominance and Superiority – Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, questions common to all Settlement Class Members predominate over any questions affecting only individual Settlement Class Members because proof of the key elements of the securities fraud claims in the

22

Action would be subject to classwide proof. *In re Internap Network Services Corp. Sec. Litig.*, 2012 WL 12878579, at *7 (N.D. Ga. Aug. 23, 2012); *see also In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002) (predominance requirement met by standard federal securities class action).

Courts in this District have also found that "[a]s a general rule, class action treatment presents a superior method for the fair and efficient resolution of securities fraud cases." *In re NetBank, Inc. Sec. Litig.*, 259 F.R.D. 656, 676 (N.D. Ga. 2009).  First, the Settlement Class consists of a large number of geographically dispersed investors in HD Supply securities whose individual damages are small enough to render individual litigation prohibitively expensive and inefficient. *See, e.g., Internap*, 2012 WL 12878579, at *8.  Second, there is no reason to expect any difficulties in the management of this case as a class action.  Accordingly, a class action is the superior method of adjudication.

## VI.   <u>THE PROPOSED NOTICE SHOULD BE APPROVED</u>

As outlined in the agreed-upon proposed Preliminary Approval Order, Lead Counsel will cause the Claims Administrator to notify Settlement Class Members of the Settlement by mailing the Notice and Claim Form to all Settlement Class Members who can be identified with reasonable effort.  The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's motion for

attorneys' fees and reimbursement of Litigation Expenses.  The Notice will also provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Settlement Class, for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form.  The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over the *PR Newswire*, and to post a copy of the Notice and Claim Form on the Settlement website created specifically for this Settlement.

Additionally, the notice program satisfies the requirements of the PSLRA, 15 U.S.C. §78u-4(a)(7), by setting forth in plain, easily understandable language: (i) a cover page summarizing the information in the Notice; (ii) a statement of the recovery and the estimated recovery per damaged share; (iii) a statement of potential outcomes of the case; (iv) a statement of attorneys' fees or costs sought; (v) identification of lawyers' representatives; and (vi) reasons for settlement. Courts routinely find that these forms and methods of notice are sufficient to satisfy due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).  *See*, e.g., *Sanchez v. Launch Tech. Workforce Sols., LLC*, 2019 WL 2098353, at *2 (N.D. Ga. May 14, 2019) (Ross, J.); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *1-*2 (S.D. Fla. Oct. 17, 2016).  Thus, Plaintiffs respectfully submit

that the proposed notice program provides "the best notice practicable under the circumstances" and should be approved. *Sanchez v. Launch Tech. Workforce Sols., LLC*, 2019 WL 2098353, at *2.

## VII.   **PROPOSED SETTLEMENT SCHEDULE**

The Parties respectfully propose the following schedule for the Court's consideration, as set forth in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | 20 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice | 10 business days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order |
| Deadline for submitting Claim Forms | Postmarked no later than 120 calendar days after the Notice Date |

## VIII.  **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

Respectfully submitted this 31st day of January 2020.


/s/ Lester R. Hooker

Maya Saxena
Joseph E. White, III
Lester R. Hooker
Kathryn W. Weidner
**SAXENA WHITE P.A.**
7777Glades Rd., Suite 300
Boca Raton, FL 33434
Tel: 561-394-3399
Fax: 561-394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
kathryn@saxenawhite.com

-and-

Steven B. Singer
Joshua H. Saltzman
Sara DiLeo
10 Bank Street, 8th Floor
White Plains, NY 10606
Tel: 914.437.8551
Fax: 888.631.3611
ssinger@saxenawhite.com
jsaltzman@saxenawhite.com
sdileo@saxenawhite.com

*Counsel for Lead Plaintiffs and the
Proposed Settlement Class*


**LINDSEY & LACY, PC**
W. Thomas Lacy
2002 Commerce Dr. N. Suite 300
Peachtree City, GA 30269

26

Telephone: (770) 486-8445
Facsimile: (770) 486-8889
tlacy@llptc.com

*Liaison Counsel for Lead Plaintiffs and the
Proposed Settlement Class*

**KLAUSNER KAUFMAN JENSEN &
LEVINSON**
Robert D. Klausner
Stuart Kaufman
7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Lead Plaintiffs*

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1(C).


/s/ Lester R. Hooker
Lester R. Hooker

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of January 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing all counsel of record.

*/s/ Lester R. Hooker*
Lester R. Hooker
